UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JUAN HERNANDEZ ALVARADO,<br>       Defendant. | S2 15-cr-379 (PKC) |

ARGUMENT & MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT JUAN HERNANDEZ'S MOTION
FOR RELEASE ON BAIL PENDING TRIAL

RETURETA & WASSEM, P.L.L.C.
Manuel J. Retureta, Esq.
300 New Jersey Avenue, NW
Suite 900
Washington, D.C. 20001
*Defense Counsel for Defendant*

I.  INTRODUCTION

Defendant Juan Antonio Hernandez Alvarado (hereinafter "Mr. Hernandez") respectfully requests this Court, pursuant to 18 U.S.C. §3142, to release him on pre-trial conditions of release pending trial.  Mr. Hernandez is a Honduran citizen named in a superseding indictment [ECF 15], which charges a drug conspiracy, firearms charges, and making false statements to law enforcement.  Mr. Hernandez is a prominent person in Honduras, but at the same time, he is not wealthy, nor violent.  He has limited resources, none of which would finance a life as a fugitive; and, he has not been charged with violent acts.  Hence, there are reasonable and technologically effective release conditions sufficient to ensure Mr. Hernandez's appearance as required, as well as the safety of the community.

Recognizing that the charges are serious and that he has strong ties to Honduras, Mr. Hernandez respectfully submits that some combination of conditions of release are appropriate.  Mr. Hernandez respectfully requests that the Court consider the following conditions of release:

1. Home Detention

2. Electronic GPS Monitoring

3. Personal Recognizance Bond (surrender of passport)

These conditions are more than sufficient to assure Mr. Hernandez's appearance, and the safety of the community.  The proposal also assures fairness to a defendant with limited financial means available to him.  To exclude consideration of a bond solely on unattainable monetary levels would constitute a "financial condition that

results in the pretrial detention" of Mr. Hernandez, a result that the applicable statue expressly intends to avoid. *See* 18 U.S.C. §3142(c)(2) (providing that the court "may not" impose such a condition). Accordingly, Mr. Hernandez respectfully submits that he should be released on the conditions he proposes.

II.  BAIL REFORM ACT

The Bail Reform Act requires a court to order the pretrial release of a defendant on a personal recognizance bond "unless the [court] determines that such release will not reasonably assure the appearance of the person as required, or will endanger the safety of any other person or the community." 18 U.S.C. §3142(b).

The law favors pretrial release, and the government must overcome a dual burden in seeking pretrial detention. First, the government bears the burden of demonstrating that a defendant is a danger to the community or an actual flight risk. *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (a finding of danger to the community must be supported by clear and convincing evidence); *United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987) (a finding of flight risk must be supported by a preponderance of the evidence).

Second, even if the government is able to demonstrate either that a defendant is a danger to the community or an actual flight risk, the law still favors the release of a defendant on conditions pending trial, and thus, the government also bears the burden of demonstrating by a preponderance of the evidence that no condition or combination of conditions imposed could reasonably assure a

3

defendant's presence in court or the safety of the community. *See United States v. Shakur*, 817 F.2d at 195 (the burden of proof is on the government to prove the absence of conditions by a preponderance of the evidence); *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985); *see also* 18 U.S.C. § 3142(c)(1)(B) (defendant should be released "subject to the least restrictive conditions, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required"). The Bail Reform Act states that where conditions of release are imposed, the court should impose "the least restrictive" conditions that the court "determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *See* 18 U.S.C. §3142(c)(1)(B).

While the government's indictment alleges crimes that give rise to a presumption that no conditions of release will assure the safety of the community, or that Mr. Hernandez will appear, it is submitted that such a presumption can be rebutted in his case. Therefore, unless the government is able to demonstrate that a defendant is a flight risk or a danger to the community and that no conditions or combination of conditions will reasonably assure a defendant's appearance at trial or the safety of the community, the defendant must be released from confinement. The statute contemplates that "it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189). And, as noted above, the statute provides that "[t]he judicial officer

4

may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. §3142(c)(2). In evaluating whether conditions of release are adequate, a court shall consider four factors: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. §3142(g).

III. PROPOSED CONDITIONS OF RELEASE

In addition to the standard conditions of bail and any conditions the Court deems necessary, Mr. Hernandez proposes the following additional conditions:

1. Mr. Hernandez shall remain on home confinement for the duration of the case proceedings.
2. Mr. Hernandez shall wear an electronic GPS monitoring device, and will follow electronic monitoring procedures specified by the Pretrial Services Agency.
3. The Court shall order a personal recognizance bond.
4. Mr. Hernandez shall consent to unannounced searches of his place of home detention by authorities, as designated by the Pretrial Services Agency.
5. Mr. Hernandez shall surrender his passport and any other travel documents in his possession.

IV. DISCUSSION OF CONDITIONS OF RELEASE

The proposed conditions of release are more than adequate to assure Mr. Hernandez's appearance at trial, as well as the safety of the community. Simply

put, given limited assets, together with his prominence in the community, he is not the type of defendant who could disappear into the community, here or in Honduras, as a fugitive. Moreover, home detention with electronic monitoring together with surrender of his passport, ameliorates any risk of flight presented by the seriousness of the charges or his status as a Honduran citizen.

Of course, additional conditions of cash or property security would increase the amount of disincentives beyond those proposed by Mr. Hernandez, but the statute requires that the Court impose the "least restrictive" conditions, and given the limited means available to Mr. Hernandez, to require this added security would be the functional equivalent of an order of detention.

Mr. Hernandez has not been charged with committing a violent crime; rather, the allegations are that he associated with drug trafficking groups. Furthermore, Mr. Hernandez has no criminal history, and the conditions he proposes are more than adequate to assure his appearance.

Additionally, nothing in the indictment indicates that Mr. Hernandez has the motive or the financial means to support any claim that he is a legitimate flight risk. There is not indication of wealth or examples of unjust enrichment. There is also an absence of any unique ability to hide or flee from his obligations to this Court. Finally, the notoriety of the case also reduces the incentives on Mr. Hernandez to flee, especially as a recognizable figure.

## V. GOVERNMENT ALLEGATIONS

It is expected that the government will rely upon a proffer at the bond hearing. The core of this proffer is anticipated to be the superseding indictment; however, the nature and timing of the charging document in this case creates more questions than answers. As for the nature of the indictment, it is clear that prosecutors crafted and sought from the grand jury a "speaking indictment." Yet, the "speaking" nature of the indictment does not yield particulars, but, rather, offers blanket allegations of a defendant supposedly deft enough to run a multinational drug industry, while being simple enough to place his initials on the illegal substance. Clearly, the government is "speaking" to another audience than the grand jury. Indeed, questions immediately arise as to what information was presented to the grand jury, and whether the "Overview" portion of the indictment has any relevance, or is mere surplusage. *See* Indictment, ECF 15 p.2-3. *See also United States v. Napolitano*, 552 F.Supp. 465, 480 (S.D.N.Y. 1982) ("The determinative question in a motion to strike surplusage is not the potential prejudice, but rather the relevance of the allegation to the crime charged in the indictment.")

The timing of the indictment is also curious. Mr. Hernandez entered the United States, freely and legally, on Monday, November 19, 2018. He traveled openly, on American Airlines, and was processed through U.S. Customs and Border Protection at the Miami, Florida port of entry. Again, he was traveling under his own name with no evidence of trying to hide his person or movement. It was this

innocent, open, and legal conduct that somehow drew the attention of prosecutors.

We now know that when Mr. Hernandez entered the United States, on November 19th, there were no charges, or case, pending against him. We know this because the indictment filed in his case issued only two-days after his arrival in Miami, on Wednesday, November 21, 2018. Sometime between November 19th and November 21st of 2018, government prosecutors decided that an indictment against Mr. Hernandez was necessary and appropriate. Yet, for more than two-years,[1] the government's urgency – and now desire to incarcerate Mr. Hernandez – was not so urgent, and certainly not serious enough to take the time of a grand jury.

Defense counsel submits that this lack of urgency by prosecutors can reasonably be explained because there was no misconduct during this time period. Per the language and allegations in the indictment, Mr. Hernandez last had contact with U.S. law enforcement in October of 2016. There are no allegations, in the indictment or before this Court, of wrongdoing since that time period. To assure that there is no such evidence, the defense requested of the government any and all material related to any evidence they intend to rely upon at the scheduled bond hearing. As of the date and time of filing this pleading, no such material has been provided to the defense in anticipation of the bond hearing.[2]

---

[1] The indictment references an interview Mr. Hernandez had with U.S. law enforcement in October of 2016. This appears to be the last criminal act alleged by the indictment. Certainly, the indictment offers no other particulars of criminal wrongdoing beyond this point in time.

[2] Defense counsel notes that today government counsel did post discovery material to the shared file system entitled "USAfx." However, defense counsel has not reviewed this material as of the filing of this pleading.

## VI. ADDITIONAL FACTORS

Courts have granted pretrial release in cases involving far more serious conduct and legitimate risks of flight. Whether community safety or ability to flee, the examples below confirm that there are conditions of release that will allow the Court to accept a bond package and not keep Mr. Hernandez detained pending trial.

In the case of *United States v. Sabhnani,* the Second Circuit approved pretrial release for two defendants charged with the violent crime of engaging in slave labor despite the defendants' ability and strong motive to flee. 493 F.3d 63, 76 (2d Cir. 2007). In *Sabhnani*, while there was not a presumption that no conditions could assure community safety or the defendants' appearance as there is in Mr. Hernandez's case, the alleged crimes were violent in nature, moreover there was substantial direct and circumstantial evidence of guilt, and, the two defendants faced lengthy prison sentences if convicted. *Id.*

The defendants in *Sabhnani* also had "ample means to finance flight" through significant wealth derived from a thriving business with operations and markets primarily outside the United States. Flight for these defendants "would impose no insurmountable personal or professional hardship" as they could continue to generate income from multiple locations overseas. *Id.*, p.76-77. Indeed, the defendants owned multi-million dollar properties, as well as cash and securities totaling approximately $8.5 million. They also owned a business that generated millions of dollars in revenue annually. Nonetheless, the defendants were released on personal recognizance bonds secured by $4.5 million, composed of $1.6 million in

equity in an apartment and $2.9 million in cash, with home confinement supervised by private security guards. *Id*. at 79.[3]

Additionally, the fact that Mr. Hernandez is not a U.S. citizen does not alone demonstrate that he should be detained pending trial or subject to onerous conditions of release. Statistics show that release for such a category of defendant is common. Court records reveal that from 2008 to 2010, 43% of all legal aliens detained in the federal court system nationwide (and 10% of illegal aliens) were released pretrial.[4] By comparison, the release rate of similarly situated U.S. citizens is only at 55%.[5] Hence, whether Mr. Hernandez is, or is not, a U.S. citizen should bear little weight. Here, Mr. Hernandez proposes strict conditions—home detention with electronic monitoring, along with surrender of his passport—that

---

[3] Although the *Sabhnani* defendants agreed to bear the expense of the surveillance firm to monitor their home detention, *Sabhnani* does not hold that district courts routinely must consider the retention of self-paid private security guards as a condition of release. Indeed, such a practice has been questioned by the Second Circuit. *See United States v. Banki*, 369 Fed. App'x 152, 153-54 (2d Cir. 2010) (acknowledging that home confinement with monitoring by private security guards "might be best seen not as specific conditions of release, but simply as a less onerous form of detention available only to the wealthy.")

[4] *See* U.S. Department of Justice, Office of Justice Programs, Pretrial Release and Misconduct in Federal District Courts, 2008-2010, *available at*: http://www.bjs.gov/content/pub/pdf/prmfdc0810.pdf.

[5] *Id*., p.10. These national figures are consistent with more recent data specific to the Southern District of New York. For the 12-month period ending September 30, 2017, over 43% of defendants detained were released pretrial. United States Courts, Table H-14, U.S. District Courts—Pretrial Services Release and Detention for the 12-Month Period Ending September 30, 2017, *available at*: https://www.uscourts.gov/sites/default/files/data_tables/jb_h14_0930.2017.pdf. Of these, approximately 80% were released on *unsecured bonds*. United States Courts, Table H-6, U.S. District Courts—Pretrial Services Defendants Released on Bond as of September 30, 2017, *available at*: https://www.uscourts.gov/sites/default/files/data_tables/jb_h6_0930.2017.pdf.

10

more than ameliorates any risk posed by his citizenship status.

Beyond comparative cases, or statistics, the Court can also refer to how the government has handled another similarly charged Honduran citizen appearing before a Southern District court. In the case of Yani Rosenthal, the government agreed to a bond package with the defendant. *United States v. Rosenthal,* 13-cr-413 (JGK). The government sponsorship of a bond package for this defendant is surprising given the facts of his case. We can learn those facts by a simple review of the government's own pleading in the *Rosenthal* case. As part of the government sentence memorandum, the *Rosenthal* defendant was described, by government prosecutors, as operating "a sophisticated money-laundering operation with the leaders of the largest and most violent drug-trafficking organization in Honduras…" *United States v. Rosenthal,* 13-cr-413 (JGK), ECF 260, p.3. Yet, the government found conditions of release appropriate.

In stark contrast to Mr. Hernandez, Southern District prosecutors classified the *Rosenthal* defendant as providing "sources of funding for their criminal enterprise, a means to launder their narcotics proceeds, and public legitimacy, thereby contributing to an environment…to import tons of cocaine..." *Id.* Addressing the resources available to this defendant, prosecutors described the defendant's use of "political power and business holdings" to assist in "laundering millions of dollars in drug-trafficking proceeds." *Id*. p.4. The government description did not end there, the defendant was further described as "one of the most powerful individuals, and a member of one of the most powerful families, in

Honduras, who did not need to accept any business from drug-traffickers in order to maintain his social position or vast wealth." *Id.* However, given the description by government prosecutors of this defendant, the government not only entertained, but also sponsored a bond package and the defendant was released pending resolution of his case. *United States v. Rosenthal,* 13-cr-413 (JGK), ECF 57. Accordingly, it is appropriate for the Court to conclude that, by the standards set by the government, there are conditions of release that would reasonably assure the community's safety and that Mr. Hernandez would comply with his obligation to appear before this Court.

VII. CONCLUSIONS

The Bail Reform Act favors release unless the government demonstrates that there are no conditions or set of conditions that can reasonably assure Mr. Hernandez's appearance for trial and the safety of the community. Home detention and GPS monitoring will assure his appearance and the public safety. Moreover, Mr. Hernandez is a public figure and not a person likely to melt into the community either here in the United States, or in Honduras. He waived extradition proceedings after his arrest in Miami, Florida, and he is committed to staying in the Unites States to assist in his defense and to address the charges. For these reasons, Mr. Hernandez respectfully requests that this Court approve his application for conditions of release pending trial.

Dated: January 2, 2019

        Respectfully submitted,

        RETURETA & WASSEM, P.L.L.C.

By:_____
    Manuel J. Retureta, Esq.
    300 New Jersey Ave., NW, Suite 900
    Washington, D.C. 20001
    202.450.6119
    MJR@RETURETAWASSEM.COM
    *Defense Counsel for Juan Hernandez Alvarado*

cc: All parties via ECF filing.