# TEIN MALONE PLLC
LAWYERS

May 10, 2019

*<u>Via ECF</u>*
The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    RE:   *United States v. Juan Antonio Hernandez Alvarado*
           S2 15 Cr. 379 (PKC)

Dear Judge Castel:

Defendant Juan Antonio Hernandez-Alvarado ("Hernandez") requests that the Court direct the government to serve a Bill of Particulars, pursuant to Fed. R. Crim. P. 7(F).

## OVERVIEW

Hernandez has been charged in the Superseding Indictment with four counts:

| | |
|---|---|
| **Count One** | conspiracy to import narcotics "from at least in or about 2004, up to and including in or about, 2016" (18 U.S.C. § 963); |
| **Count Two** | possession of machineguns in relation to a drug-trafficking crime (18 U.S.C. § 924(c)); |
| **Count Three** | § 924(c) conspiracy (18 U.S.C. § 924(o)); and |
| **Count Four** | making false statements to the DEA during a 2016 non-custodial interview, by denying the conduct charged in Counts 1-3 (18 U.S.C. § 1001). |

Counts One, Two and Three span a twelve-year period from 2004 to 2016.

## VAGUENESS, BY COUNT

*Count One*:  The drug-conspiracy count is vague, particularly given its ambitious scope.  That count alleges that, as "the brother of the current President of Honduras," Hernandez:

- "was involved in" trafficking "multi-ton loads of cocaine that arrived in Honduras" in different shipping vessels, including "on at least one occasion, a submarine";

- "had access to cocaine laboratories in Honduras and Colombia" where "some of the cocaine was stamped" with what the government claims are his initials, "TH";

- "bribed law enforcement officials" and "solicited bribes"; and finally

- was videotaped meeting [at a "Denny's" restaurant] with and receiving $50,000 from one Devis Rivera, a former leader of the violent "Cachiros" gang.

Discovery on this count disclosed a photo of a packet of drugs stamped "TH" and a (jumpy, mostly inaudible) video of the "Denny's" meeting, but nothing else.

*Counts Two and Three*:  The machine-gun counts are even more vague.  They do not specify what the guns were, when and where Hernandez used and carried them, or how these uses and carries were in furtherance of a drug-trafficking crime.  Discovery on these counts disclosed seven pictures of guns found on Hernandez' cell phone at the time of his arrest.

*Count Four*:  In 2016, after learning of the investigation, Hernandez voluntarily presented himself to the investigators in this case, in Miami, Florida, to answer questions and establish his innocence.  Count Four alleges he made false statements during that meeting by denying that he accepted money from or provided assistance to traffickers.  The indictment does not specify what particular statements Hernandez made at that meeting, much less, why they were false.

## PARTICULARS REQUESTED

1. Dates, locations and participants of any meetings or conversations the government will contend furthered the conspiracy charged in Count One.

2. The names of Hernandez' direct co-conspirators, including those individuals referred to as "others" in Counts One and Three.

3. A description of how Hernandez used or carried machine guns as charged in Counts Two and Three, including the type of gun, dates, locations and relationship to a drug-trafficking crime.

4. Other than allegedly stating that "he never accepted money from drug traffickers" and that he "never provided assistance to drug traffickers in any way," the substance of any other allegedly false statements made by Hernandez in connection with Count Four.

5. Particulars of the megabytes of "meta-data" produced in discovery, including which overt acts particular data corresponds to.

## ARGUMENT

As charged, this case would have hemisphere-level significance. One would expect similarly robust supporting evidence. Despite the immense haystack of discovery, there are very few needles.

The government alleges that Hernandez and other "high-ranking Honduran politicians" converted Honduras into a government-sponsored "major transshipment point" for cocaine between South America and the United States. Hernandez supposedly coordinated "large bribes" and "heavily armed" "military-grade" protection for the trafficking of "multi-ton loads" of drugs by, among other means of transportation, "submarine." With similar throw-weight but lack of detail, it also alleges that Hernandez "had access to cocaine laboratories" where drugs were branded "T.H." (which by the government's reckoning, are the initials of our own *A*ntonio *H*ernandez).

Although the grand jury took the time to supersede, they provided almost no detail. The ensuing discovery has added little, despite its volume (hundreds of megabytes of meta-data and uncompressed recordings). And sensational as it may be, the mere happenstance that the defendant is the brother of Honduras' sitting president cannot substitute for admissible evidence.

Most respectfully, before the Court is a splashy charging document with remarkably little support in the discovery. The virtually inaudible voices on the 2014 Denny's video are further marred by background noise and evidently, the $50,000 payoff

the government touted to the Court[1] must have changed hands off-camera. Hernandez' two statements to law enforcement (2016 non-custodial and 2018 custodial) both **deny** culpability. If "T.H. The Trafficker" was mastermind enough to brand his drugs with his own initials, *cf.* Superseding Indictment ¶ 4 (DE 15), we cannot see how this implicates our client, whose initials are "J.A.H.A." This case cries out for particulars, lest the trial be the "surprise" Rule 7(f) would prevent.

This Court recently recited the standard for evaluating a request for particulars:

> Rule 7(f), Fed. R. Crim. P., "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). Whether to grant a bill of particulars is in the trial court's "sound discretion." *Id*. A bill of particulars should not be a vehicle for defendants "to preview the evidence or theory of the government's case" or to access information that is merely "helpful." *United States v. English*, 2011 WL 3366490, at *4 (S.D.N.Y. July 29, 2011) (McMahon, J.).[2]

Courts in this District have granted requests for particulars like ours. A list of relevant meetings has been required.[3] Names of co-conspirators who attended the illegal

---

[1] *See* Gov. Req. for Pre-Trial Detention, at 3-4 (DE 22) (stating, "Rivera Maradiaga, the former leader of a violent Honduran drug-trafficking organization known as the *Cachiros* … audio and video recorded the meeting, capturing the defendant on tape …. Rivera Maradiaga paid the defendant approximately $50,000 during the meeting.").

[2] *United States v. Tucker*, No. 16 Cr 91 (PKC), 2017 WL 3610587, *5 (S.D.N.Y. Mar. 1, 2017) (denying request because government adequately particularized the false statements by disclosing copies of the sham affidavits). *See also United States v. Hoey*, No. S3 11 Cr 337 (PKC), 2014 WL 2998523, *4 (S.D.N.Y. Jul. 2, 2014) (denying request for failure to confer); *United States v. Fea*, No. 10 Cr 708 (PKC), 2011 WL 2119708, *1 (S.D.N.Y. May 24, 2011) (denying request for failure to confer).

[3] *United States v. Kortright*, No. 10 CR 937 (KMW), 2011 WL 4406352, at *3 (S.D.N.Y. Sept. 13, 2011) (requiring the government to provide "the approximate date and location of any meeting, conversation, or any other sort of activity, at which the Government will contend that Defendant joined the conspiracy").

meetings have been ordered furnished.[4] Identifying them before trial has been viewed as all the more important when the conspiracy spans a long period, like the one here.[5] And while we understand that for the § 1001 charge, the government will rely on the memories of the attending agents, in all fairness, §1001 indictments really should quote the accused's alleged lie(s).[6]

---

[4] *See* United States v. Kahale, 789 F.Supp.2d 359, 371-74 (E.D.N.Y. 2009); United States v. Oruche, 2008 WL 612694, *4 (S.D.N.Y. 2008); United States v. Nachamie, 91 F. Supp. 2d 565, 573 (S.D.N.Y. 2000); "The request for the names of unindicted co-conspirators is a fairly common request and one that is generally granted by the district courts." United States v. Failla, No. CR-93-294 (CPS), 1993 WL 547419, at *7 (E.D.N.Y. Dec. 21, 1993); United States v. Lino, No. 00-CR-632 (WHP), 2001 WL 8356, at *13 (S.D.N.Y. Jan. 2, 2001) (ordering government to file bill of particulars "well in advance of trial" naming all co-conspirators who will testify, or be referred to, at trial to "facilitate defendants' trial preparation and allow them to narrow, or at least to prioritize, their review of the [discovery] and to avoid surprise at trial").

[5] *See, e.g.*, *Oruche*, 2008 WL 612694, at *4 (S.D.N.Y. Mar. 5, 2008) (ordering the filing of bill of particulars in narcotics conspiracy spanning a number of years the identification of "any known unindicted co-conspirator with respect to each paragraph of the Indictment in which the word 'others' appears"); *Nachamie*, 91 F. Supp. 2d at 572-73 (S.D.N.Y. 2000) (requiring identification of co-conspirators in alleged complex Medicare fraud conspiracy spanning over three years, involving 2,000 false claims and 200,000 pages of discovery); United States v. Savin, No. 00-CR-45 (RWS), 2001 WL 243533, at *5 (S.D.N.Y. Mar. 7, 2001) (requiring disclosure of co-conspirators involving 100,000 pages of discovery, a mail and wire fraud conspiracy over a six-year period, and "numerous transactions"). This case should be treated no differently, especially since there has been no suggestion of special circumstances that warrant withholding the identities of known co-conspirators, such as a disclosure that would endanger someone or harm an ongoing investigation. *See* United States v. Bin Laden, 92 F. Supp. 2d 225, 241 (S.D.N.Y. 2000) (requiring disclosure of co-conspirator identities unless Government made a "particularized determination, in good faith," that disclosure would "either (1) expose the person or someone else to a significant risk of bodily harm; or (2) compromise an ongoing investigation").

[6] "[A] request to particularize allegations of false statements" is "routinely award[ed]." *Lino*, 2001 WL 8356, at *6 (S.D.N.Y. Jan. 2, 2001) (citing *United States v. Bortnovsky*, 820 F.2d at 547-48 (2d Cir. 1987) (per curiam), *Nachamie*, 91 F. Supp. 2d at 574 (S.D.N.Y. 2000)) and United States v. Trie, 21 F. Supp. 2d 7, 21-22 (D.D.C. 1998)). The same reasoning for granting a bill of particulars identifying fraudulent transactions applies equally to identifying false statements. *Id.*; United States v. Siddiqi, No. 06 CR. 377 SWK, 2007 WL 549420, at *3 (S.D.N.Y. Feb. 21, 2007).

Based on the foregoing, defendant Hernandez respectfully requests that the Court direct the government to file a Bill of Particulars addressing the four categories described above.

Respectfully submitted,

*/s/ T. Omar Malone*
T. Omar Malone, Esq.
omalone@teinmalone.com
Michael R. Tein, Esq.
tein@teinmalone.com

TEIN MALONE PLLC
3059 Grand Avenue
Coconut Grove, Florida 33133
(305) 442-1101

*Counsel for Juan Antonio Hernandez Alvarado*

**Certification of Conference of Counsel**

Pursuant to Local Cr. R. 16.1, I, Michael R. Tein, hereby certify that I conferred with counsel for the government in an effort in good faith to resolve by agreement the issues raised by this motion without the intervention of the Court but was unable to reach an agreement.

*/s/ Michael R. Tein*
Michael R. Tein

Cc: AUSA Emil J. Bove, III;
AUSA Matthew J. LaRoche
(via ECF)