# TEIN MALONE PLLC
LAWYERS

May 10, 2019

*__Via ECF__*
The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> RE:  ***United States v. Juan Antonio Hernandez Alvarado***
>      **S2 15 Cr. 379 (PKC)**

Dear Judge Castel:

We respectfully request that the Court enter an order to suppress Juan Antonio Hernandez-Alvarado's ("Hernandez") post-arrest statement for the reasons outlined below.

## Motion to Suppress Post-Arrest Statement

The government interviewed Hernandez twice:  first, in a 2016 non-custodial proffer in the presence of his lawyer; and second, after his arrest in November 2018, upon a *Miranda* waiver.  The 2018 statement should be suppressed because it was taken in violation of the "no contact" rule and the Sixth Amendment.

## OVERVIEW

This arrest was planned, not reactive.  Hernandez had been a target of this prosecution team since at least 2016.  The DEA agents knew that Hernandez had entered the United States from Honduras on November 19, 2018 with a return ticket for November 23.  The grand jury indicted him on November 21 and the DEA set up at Miami International Airport to arrest him two days later on his way home.

At the same time, the DEA and the U.S. Attorney's Office well knew that Hernandez had a lawyer in this same investigation, namely Manuel Retureta, Esq.  In fact, in October 2016, the lead DEA agent and lead prosecutor in this matter personally coordinated with Retureta to conduct a voluntary, non-custodial, non-immunized interview of Hernandez, with his lawyer Retureta at his side.  Attorney Retureta, the lead DEA agent and the lead prosecutor had numerous communications by phone, email and text-message leading up to the meeting in order to arrange it.  The lead prosecutor personally flew to Miami to participate in the proffer session, which the lead DEA agent also attended.  There is simply no doubt that on November 23, the prosecution and arresting agents knew that Hernandez was a represented party.

Hon. P. Kevin Castel
May 10, 2019

On November 23, after Hernandez was arrested but before the agents began recording their interview, the videotape reflects that Hernandez clearly and unequivocally asked to speak with his lawyer, Retureta.  At this point (if not before), the agents should have stopped the interrogation.  Instead, the agents plowed forward, telling Hernandez that they were unable to contact Retureta and advising him that even if Retureta were his lawyer "today," Retureta was not his lawyer "now."  The agents then began videotaping the interview, repeated their false legal advice, had Hernandez sign a written waiver and continued questioning him.

Department of Justice rules incorporate New York's "no contact" rule (R. Prof. Cond. 4.2(a)) and squarely prohibit law-enforcement agents, as alter-egos of Department lawyers, from communicating with a represented party about the subject of that representation.  They could not even ask Hernandez to waive Retureta's presence -- only the lawyer could waive it.  And constitutionally, once Hernandez asked the agents to call Mr. Retureta for him, they had no business convincing him that Retureta was no longer his lawyer and persuading him to waive his right to Retureta's presence.  The agents could lawfully arrest Hernandez but coaxing his cooperation had to await counsel.

There is no fair way to view this custodial interrogation as anything but the agents' engaging in substantive interrogation of a represented party, whom they knew was represented, in the same matter, and thereby doing an end-run around his lawyer.  The post-arrest statement must be suppressed.

## FACTS

### *2016 Non-Custodial Proffer*

In October 2016, the U.S. Attorney and the DEA coordinated a non-custodial interview of Hernandez through his lawyer, Manuel Retureta, Esq.  The government promised Retureta in writing that Hernandez would not be arrested if he came to the United States for the interview.   The interview was conducted pursuant to a proffer agreement expressly acknowledging Mr. Retureta as Hernandez' lawyer, signed by Retureta and government counsel:

> PROFFER AGREEMENT
>
> With respect to the meeting of Juan Antonio Hernandez ("Client") and his attorney, Manny Retureta, Esq., with Assistant United States Attorney Matthew Laroche to be held at the Office of the United States Attorney for the Southern District of Florida on October 25, 2016 ("the meeting"), the following understandings exist:

* * *

Tein Malone PLLC

Hon. P. Kevin Castel
May 10, 2019



   (9)  Client and Attorney acknowledge that they have fully discussed and understand every paragraph and clause in this Agreement and the consequences thereof.

Dated:  Miami, Florida

_____
Client

_____
Attorney for Client

PREET BHARARA
United States Attorney for the
Southern District of New York

by_____
Assistant United States Attorney

_____
Witness

According to the government's notes of the meeting provided in discovery here, the meeting did not end very well:

- ML states that TH is not being truthful about his relationship with traffickers—meeting ends.

Regardless, Retureta and the lead prosecutor continued to email and speak on the phone about this investigation as it related to Retureta's client Hernandez, well into 2017:

Tein Malone PLLC

Hon. P. Kevin Castel
May 10, 2019



On May 19, 2017, at 9:55 AM, Laroche, Matthew (USANYS)
<Matthew.Laroche@usdoj.gov<mailto:Matthew.Laroche@usdoj.gov>> wrote:

Sorry for the delay.  Sure.  How about 11?

On May 19, 2017, at 8:43 AM Manuel Retureta
<mjr@returetawassem.com<mailto:mjr@returetawassem.com><mailto:mjr@returetawassem.com>> wrote:

Hello Matt,

Are you available today for a phone call regarding Tony Hernandez?

Thanks,

Manny


Manuel J. Retureta, Esq.

* Direct Line:  202.549-0679

Likewise, Retureta and the DEA agent who participated in the 2016 interview stayed in contact after the 2016 proffer, including meeting in October 2017.  During that meeting, the two discussed the ongoing investigation and the agent knew that Retureta was still Hernandez' lawyer.  In fact, both meetings were coordinated on the same string of text-messages:

Tein Malone PLLC

Hon. P. Kevin Castel
May 10, 2019

Stephen *Fraga*
(DEA Agent at 2016
debriefing with USAO)

Sandalio "*Sandy*"
Gonzalez (DEA Agent at
2018 post-arrest statement)

October **2017** meeting
with DEA Agent Fraga



There is not a shadow of a doubt that the DEA knew that Mr. Retureta was defendant
Hernandez' lawyer when they arrested him in 2018.

Tein Malone PLLC

Hon. P. Kevin Castel
May 10, 2019

### *2018 Custodial Interview*

After Hernandez' planned arrest on November 23, 2018 at Miami International Airport, the DEA agents brought Hernandez to an interview room.  The very beginning of the videotape indicates that there had been an unrecorded initial exchange in which Hernandez referred to the 2016 proffer and asked to speak with his lawyer Retureta but the agents dissuaded him:

| | | |
|---|---|---|
| DEA | *Hoy es, hoy es el veintitrés de noviembre de dos mil dieciocho. Son las doce y media, doce y treinta y cinco de la tarde. Sólo quiero que ... repetir aquí lo que usted me dijo anteriormente. Que usted quiere proceder y dar una declaración y hablar con nosotros.  No tiene representación legal hoy ... ahora. Eh ... Vas a hablar con un abogado en el futuro, pero quieres empezar este proceso ahora.* | *Today is, is November the twenty-third, two thousand and eighteen.  It is half past twelve, twelve thirty-five in the afternoon. I just want to ... to repeat here what you told me earlier. That you wish to proceed and make a statement and talk with us. You do not have legal representation today ... now.  Huh ... You will be talking to a lawyer in the future, but you wish to start this process now.* |
| DFT | *Así es. Quiero empezar.* | *That's right.  I want to start.* |

The agent's stumbling over the difference between having a lawyer "today" and "now" is telling.  The interviewer continues, telling Hernandez that they called his lawyer Retureta "several times but he did not answer":

| | | |
|---|---|---|
| DEA | *Y llamamos varias veces al señor Retureta pero no contestó.  Pero todavía quieres seguir adelante.* | *And we called Mr. Retureta several times but he did not answer. But you still wish to go ahead.* |
| DFT | *Quiero.* | *I do.* |

There appears to have been no attempt to text or email Retureta or even leave him a voicemail message.  This was despite the fact that the DEA agents and the prosecutor had Retureta's mobile phone number and email address and had texted and emailed him on prior occasions.  Mr. Retureta's records confirm this.  Further, Mr. Retureta does not recall receiving any calls (much less unanswered calls) on November 23.  The agents then read the *Miranda* form to Hernandez in Spanish, offered it to him to read, and had him execute it and the written waiver (initials, "yes" and signature).  Hernandez then verbally confirmed that he had not been "pressured" or "threatened" or had any weapons pointed at him and agreed that the "conversation is totally voluntary" (Tr. 3, attached as Ex. A).

Tein Malone PLLC

Hon. P. Kevin Castel
May 10, 2019

The interviewing agent again acknowledged that he had interviewed Hernandez before turning on the recorder and that they had discussed contacting Retureta.  The agent then gave the misleading legal advice to Hernandez that since he had not spoken with Retureta in the past year, "[t]hen he is not your lawyer today ... until you talk to him again."  Clearly reiterating his wish to have Retureta present, Hernandez then voiced his "hope that he will join the process."  The relevant exchange is as follows:

| | | |
|---|---|---|
| DEA | *OK. Eh ... Yo sé que usted dijo anteriormente que ... que viniste a hablar con nosotros hace año y algo.* | *OK.  Huh ... I know you said earlier that ... that you came to talk to us over a year ago.* |
| DFT | *Sí. Hace año y medio o dos años; no sé. Algo así.* | *Yes. A year and a half or two years ago; I don't know. Something like that.* |
| DEA | *Y creo que dijiste algo alrededor de que quieres empezar este proceso de cooperación de ... ya hace tiempo.* | *And I believe that you said something about your wishing to start this cooperation process sin... since some time ago.* |
| DFT | *Sí, lo que hablaba con el abogado Retureta era que yo estaba dispuesto a venirme para acá por si ustedes querían seguir teniendo algunas aclaraciones o que yo siguiera respondiendo algunas interrogantes de ustedes. Y en eso, pues, me dijo el abogado: "Esperemos, que ellos nos van a avisar". Y pasó el tiempo y ... perdí contacto con el abogado y ... y pasó lo de hoy.* | *Yes, what I was discussing with Attorney Retureta was that I was prepared to come over here in case you all wanted to continue having some clarifications or for me to continue answering questions from you all.  And at that time, well, the lawyer told me: "Let's wait; they will let us know."  And time went by and ... I lost touch with the lawyer. And ... and what happened today happened.* |
| DEA | *¿Cuándo es la última vez que usted habló con el abogado?* | *When was the last time that you spoke with the lawyer?* |
| DFT | *Creo que ... hace un año.* | *I think it was ... one year ago.* |
| DEA | *¿Hace un año?* | *One year ago?* |
| DFT | *Sí.  (Unintelligible)* | *Yes.  (Unintelligible)* |
| DEA | *Entonces no es tu abogado hoy en día ... hasta que usted hable con él de nuevo.* | *Then he is not your lawyer today ... until you talk to him again.* |
| DFT | *Hasta que hable con él de nuevo. Él es el que estaba llevando el tema primero y ...* | *Until I talk to him again.  He is the one who was handling the matter first ...* |
| DEA | *Ajá* | *Aha* |

www.teinmalone.com (305) 442-1101

7

Tein Malone PLLC

| DFT | *… pero he perdido el contacto con él. Esperemos que se … que se agregue él al proceso.* | *… but I have lost touch with him.  Let's hope that he … that he will join the process.* |
|-----|---------------------------------------------------------------------------------------------|--------------------------------------------------------------------------------------------|

### DISCUSSION

The Department of Justice Manual[1] prohibits Assistant U.S. Attorneys from communicating with a party who is represented by counsel in the matter "unless the lawyer has the consent of the other lawyer."[2] The term "communication" includes "merely listening to a represented person, even when the Department attorney is not asking the represented person any questions."[3] The Department instructs that "the [defense] lawyer's consent, **not the client's** … is required to authorize contact with a represented person."[4]  These ethical requirements "may be imputed to the law enforcement agents" if they attempt to "communicate with represented persons as part of a law enforcement investigation."[5]

Particularly important for our purposes, the Justice Manual indicates that it would be unethical for a Department lawyer involved in the illicit communication to offer it into

---

[1] The Justice Manual was previously called the U.S. Attorney's Manual before its comprehensive revision in 2018.

[2] U.S. Dep't of Justice Manual, Criminal Resource Manual ("CRM"), § 296 (adopting ABA Model Rule of Professional Conduct 4.2).  Government lawyers are "subject to" the ethical rules of the state "where such attorney engages in that attorney's duties."  28 U.S.C. § 530B.  Government attorneys "shall conform their conduct" to and "shall, in all cases, comply" with those "rules of ethical conduct." 28 CFR §§ 77.3-.4.  *See also* Criminal Resource Manual, § 9-13.200 ("Communications with Represented Persons," instructing DOJ attorneys that they "are governed in criminal … investigations and proceedings by the relevant rule of professional conduct that deals with communications with represented persons"); 28 CFR 77.5 (no private remedies created).

[3] CRM § 296(C).

[4] CRM § 296(F).

[5] CRM § 298.

Tein Malone PLLC

Hon. P. Kevin Castel
May 10, 2019

evidence.[6]  The Second Circuit confirms these restrictions, observing that exclusion would be appropriate unless the ethical rule was "previously unsettled in this area."[7]

Not only did this custodial interview violate Department regulations and New York ethical rules, it also violated the Fifth and Sixth Amendments.  As this Court has observed, "*Miranda* warnings and right to counsel are not themselves required by the Constitution but are rather procedural safeguards to insure that a suspect's Fifth Amendment rights are not violated."[8]  When the accused asks his interrogators to contact his lawyer (indeed, by name), however, that constitutes invocation of his Sixth Amendment right to counsel and interrogation must cease.[9]  The agents cannot deceive the accused[10] about their

---

[6] CRM § 298 (citing the ABA's position that "the mere later use by a non-complicitous attorney of evidence obtained in violation of a rule of professional conduct does not constitute 'ratification' of the misconduct and therefore, the improperly-obtained evidence need not be suppressed").

[7] *United States v. Hammad,* 858 F.2d 834 (2d Cir. 1988) (use of an informant as prosecutor's agent to speak to represented party); *United States v. Schwimmer,* 882 F.2d 22 (2d Cir. 1989) (questioning witness in the grand jury pursuant to subpoena not prohibited).

[8] *Wims v. New York City Police Dep't*, No. 10 Civ. 6128, 2011 WL 2946369, at *5 (S.D.N.Y. 2011) (Castel, J.).

[9] *Cf. United States v. Scarpa,* 701 F. Supp. 379, 384 (E.D.N.Y. 1988) ("there is nothing in the record to show that Scarpa exercised his right to counsel by requesting that someone else try to reach an attorney"); *United States v. Siraj,* 424 F. Supp.2d 509, 512 (E.D.N.Y. 2006) ("Although defendant testified he wanted to call his parents so they could contact his attorney, he never communicated that he wanted a lawyer to any of the government officials.").

[10] While unethical, false statements to the suspect's **lawyer** do not vitiate voluntariness. *See Moran v. Burbine,* 475 U.S. 412, 424 (1986) (no violation of *Miranda* when the police misled defendant's **lawyer**, by saying they would not interview his client until the attorney arrived, because it did not deprive the defendant "of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them"); *Matney v. Armontrout,* 956 F.2d 824, 825-26 (8th Cir. 1992) (holding that police failure to inform the defendant of his lawyer's attempts to contact him and misstatements to his **lawyer** as to whether defendant was at the police station did not violate the defendant's due-process rights).

Hon. P. Kevin Castel
May 10, 2019

efforts.[11]  This is especially true when, as here, the suspect was not "knowledgeable about *Miranda* waivers in federal court."[12]

    While some police tricks do not undermine the voluntariness of a confession under the Fifth Amendment (*e.g.*, falsely stating that a co-defendant had already confessed[13]), tricks that directly undermine the accused's attempts to contact his lawyer, do.[14]  Here, deceiving Hernandez about his lawyer's availability undermined his unequivocal request for counsel.  It was the same as handing Hernandez a broken telephone (or one rigged to just ring and ring).

    Our point is that, knowing that Retureta was Hernandez' lawyer, the Justice Manual and New York ethics rules squarely prohibited the DEA (as the agents of the prosecuting attorneys) from substantively interviewing him ***at all*** (obviously, they could process him and elicit biographical information).  Certainly, once their prisoner asked to speak with his lawyer Retureta by name, the DEA had to seek ***Retureta's*** permission -- not the defendant's -- before they could speak with him.

## CONCLUSION

    This is not a close question.  Every Assistant U.S. Attorney and every federal agent knows that when a target of an investigation has counsel and is later indicted and arrested, a federal statute and Department regulations, both of which incorporate forum-state bar rules, forbid any substantive interviews without prior permission from the target's lawyer.  There is no "arresting agent" exception.

    The prosecution team, including the arresting agents, knew that Mr. Retureta was defendant Hernandez' lawyer beginning with the 2016 proffer.  They continued to keep in

---

[11] *Miranda v. Arizona, 384 U.S. 436, 476 (1966)* ("Any evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege."); *cf. Colorado v. Spring, 479 U.S. 564, 577 (1987)* ("mere silence by law enforcement officials as to the subject matter of an interrogation" is not "trickery").

[12] *United States v. Anderson, 929 F.2d 96, 99 (2d Cir. 1991)* (affirming suppression of statements where agent told suspect, "if you want a lawyer you can't cooperate").

[13] *Holland v. McGinnis, 963 F.2d 1044, 1052 (7th Cir. 1992)* ("Of the numerous varieties of policy trickery ... a lie that relates to a suspect's connection to the crime is the least likely to render a confession involuntary."); *United States v. Samia, No. (S9) 13 Cr. 521 (LTS), 2016 WL 7223410 (S.D.N.Y. Dec. 13, 2016)*.

[14] *Cf. United States v. Burnette, 535 F. Supp.2d 772, 780 (E.D. Tex. 2007)* (no violation because when suspect asked to call his attorney, "the agents stopped the interview, and placed a telephone call to an attorney that [suspect] named ... and allowed [suspect] to speak with him privately").

Tein Malone PLLC

Hon. P. Kevin Castel
May 10, 2019

touch with Retureta about the Hernandez investigation, well into 2017.  When they arrested Hernandez in 2018, the agents should have respected the "no contact" rule.  They did not.  Certainly, when Hernandez asked to speak to Retureta, they should have immediately ceased all questioning until they received permission *from Retureta*.

Continuing to interrogate the prisoner and persuade him that his lawyer was unavailable and, worse yet, was no longer his lawyer, flagrantly violated Department regulations, bar rules and his constitutional rights to counsel and against self-incrimination.  The 2018 statement should be suppressed.

Respectfully submitted,

*/s/ Michael R. Tein*
Michael R. Tein, Esq.
tein@teinmalone.com
T. Omar Malone, Esq.
omalone@teinmalone.com

TEIN MALONE PLLC
3059 Grand Avenue
Coconut Grove, Florida 33133
(305) 442-1101

*Counsel for Juan Antonio Hernandez Alvarado*

Cc:    AUSA Emil J. Bove, III;
       AUSA Matthew J. LaRoche
       (via ECF)