UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF THE UNITED
STATES OF AMERICA FOR ORDER TO
DISCLOSE NON-CONTENT INFORMATION
PURSUANT TO 18 U.S.C. § 2703(d)

18 MAG 10644

SEALED APPLICATION

EMIL J. BOVE III affirms as follows:

1. I am an Assistant United States Attorney in the Southern District of New York and, as such, I am familiar with this matter.

2. The Government is seeking an Order pursuant to Title 18, United States Code, Section 2703(d) to require the Google, Inc., Microsoft Corporation, Apple, Inc., and Oath Holdings, Inc. (collectively, the "Providers"), to provide all subscriber information and the to/from headers and other non-content information for e-mails stored in the following "Target Accounts":

   a. The email address ███████, with subscriber name Antonio Hernandez, and service provided by Google.

   b. The email address ███████, with subscriber name Angélica Maria Maldonado Cueva, and service provided by Google.

   c. The email address ███████, with subscriber information unknown, and serviced provided by Google.

   d. The email address ███████, with subscriber name Mario José Calix Hernández, and service provided by Google.

   e. The email address ███████, with subscriber information unknown, and service provided by Google.

   f. The email address ███████, with subscriber information unknown, and service provided by Google.

12.12.2018

g. The email address ███████████ with subscriber name mario jose calix Hernandez, and service provided by Microsoft.

h. The email address ███████████, with subscriber name unknown, and service provided by Microsoft.

i. The email address ███████████ with subscriber name Mario jose Calix hernandez, and service provided by Apple.

j. The email address ███████████, with subscriber name Mario jose Calix hernandez, and service provided by Apple.

k. The email address ███████████, with subscriber name Mr Juan Antonio Hernandez Alvarado, and service provided by Oath Holdings, Inc. (previously Yahoo).

l. The email address ███████████ with subscriber information unknown, and service provided by Oath Holdings, Inc. (previously Yahoo).

3. The records requested from the Providers are set forth below and in the accompanying proposed Orders.

4. 18 U.S.C. § 2703(c) provides authority for a court to order an electronic communications service provider to disclose records or information not including the contents of communications without notice to the subscriber or customer, if the records are relevant and material to an ongoing criminal investigation.

5. Specifically, 18 U.S.C. § 2703(c)(1) provides in pertinent part:

A government entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or a customer of such service (not including the contents of communications) . . . when the governmental entity–

. . . .

obtains a court order for such disclosure under subsection (d) of this section;

. . . .

6. 18 U.S.C. § 2703(d), in turn, provides (in pertinent part):

> A court order for disclosure under subsection . . . (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the . . . records or other information sought, are relevant and material to an ongoing criminal investigation.

As specified in 18 U.S.C. § 2711(3), this Court is a court of competent jurisdiction under the Stored Communications Act because it has jurisdiction over the offenses being investigated, as defined below.

7. In addition, 18 U.S.C. § 2703(c)(3) provides:

> A governmental entity receiving records or information under [18 U.S.C. § 2703(c)] is not required to provide notice to a subscriber or customer.

8. Finally, 18 U.S.C. § 2705(b) authorizes the Court to issue an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in:

> (1) endangering the life or physical safety of an individual;
>
> (2) flight from prosecution;
>
> (3) destruction of or tampering with evidence;
>
> (4) intimidation of potential witnesses; or
>
> (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 2705(b)(1)-(5).

9. As set forth below, there are specific and articulable facts showing that there are reasonable grounds to believe that the records sought herein are relevant and material to an ongoing

3

investigation of violations of Title 21, United States Code, Sections 841, 846, 952, 959, 963 (drug-trafficking offenses); Title 21, United States Code, Section 843 (offenses relating to the use of communication facilities in furtherance of drug-trafficking crimes); Title 18, United States Code, Sections 956 and 957 (offenses relating to money laundering); and Title 18, United States Code, Sections 924 (offenses relating to the use of firearms and destructive devices in furtherance of drug-trafficking crimes), among other statutes.

Background

10. Juan Antonio Hernandez Alvarado, a/k/a "Tony Hernandez" ("Hernandez"), is a former member of the National Congress of Honduras, the brother of the current President of Honduras, and a large-scale drug trafficker who worked with other drug traffickers in, among other places, Colombia, Honduras, and Mexico, to import cocaine into the United States.

11. Hernandez is charged in three counts in Superseding Indictment S2 15 Cr. 379 (PKC) with violations of Title 21, United States Code, Section 963, Title 18, United States Code, Section 924(c), and Title 18, United States Code, Section 924(o). As set forth in the Superseding Indictment, which is attached hereto and incorporated by reference, a grand jury in this District has found that:

 a. From at least in or about 2004, up to and including in or about 2016, Hernandez was involved in processing, receiving, transporting, and distributing multi-ton loads of cocaine that arrived in Honduras via planes, go-fast vessels, and, on at least one occasion, a submarine. Hernandez had access to cocaine laboratories in Honduras and Colombia, at which some of the cocaine was stamped with the symbol "TH," *i.e.*, "Tony Hernandez." Hernandez also coordinated and, at times, participated in providing heavily armed security for cocaine shipments transported within Honduras, including by members of the Honduran National Police and drug traffickers armed with, among other weapons, machineguns.

b. As part of his drug-trafficking activities, Hernandez and his co-conspirators bribed law enforcement officials for sensitive information to protect drug shipments and solicited large bribes from major drug traffickers for Hernandez and on behalf of one or more high-ranking Honduran politicians.

c. In or about February 2014 in Honduras, Hernandez met with Devis Leonel Rivera Maradiaga, the former leader of a violent Honduran drug-trafficking organization known as the *Cachiros*, for a meeting set up by, among others, a former member of the Honduran National Police. During part of that meeting, which was video and audio recorded, Hernandez agreed to help Rivera Maradiaga by causing Honduran government entities to pay money owed to one or more *Cachiros* money-laundering front companies in exchange for kickback payments from Rivera Maradiaga. Rivera Maradiaga paid Hernandez approximately $50,000 during the meeting.

12. Based on conversations with agents participating in this investigation and my review of reports related to this investigation and information from law enforcement databases, I know that:

a. On November 23, 2018, the DEA arrested Hernandez based on the charges in the Superseding Indictment at Miami International Airport.

b. Two telephones, a small quantity of Mexican currency, a ledger bearing the name of the bank Davivienda, and a letter from the bank Banrural Honduras SA, among other things, were seized from Hernandez in connection with the arrest. The Davivienda bank ledger bore a handwritten annotation that included the email address ▮▮▮▮▮. The letter from Banrural Honduras SA referred to an account associated with the email address ▮▮▮▮▮

c. Following his arrest, Hernandez waived his *Miranda* rights and told DEA agents, in substance and in part, that he had recently traveled to, among other places, Mexico to meet the family of a friend named "Carlos" who was involved in transactions in Mexico and Honduras involving real estate in Mexico. Based on my training and experience, I know that drug traffickers sometimes launder drug proceeds by using drug proceeds to purchase assets such as real estate.

d. Prior to his arrest, Hernandez traveled to the United States from Honduras with another man ("Individual-1"), and they stayed in Houston, Texas, before flying to Miami on November 23, 2018. Individual-1 told the DEA on November 23, 2018, in substance and in part, that an associate ("Individual-2") had invited Individual-1 and Hernandez to Houston.

e. According to a DEA database, a telephone number associated with Individual-2 has been in contact with a man based in the Northeast who was arrested in 2017 and charged with a money laundering offense, but the charge was subsequently dismissed.

f. Individual-1 consented to a search of his phone on November 23, 2018. The phone contained a contact with a telephone number that was saved as "Carlos Mexico." According to the same DEA database, the telephone number associated with the "Carlos" contact in Individual-1's phone has been in contact with the target of a DEA investigation targeting cocaine-distribution activities in Atlanta and Houston.

13. In approximately 2016, a drug trafficker who is now a cooperating witness ("CW-1")[1] provided a Blackberry PIN to the DEA and indicated, in substance and in part, that the PIN belonged to another drug trafficker. Based on information from Blackberry, the subscriber

---

[1] In June 2018, CW-1 pleaded guilty, pursuant to a cooperation agreement, to participating in a conspiracy to import cocaine into the United States. Information provided by CW-1 has proven to be reliable in that some of the information has been corroborated by other witness accounts and consensually recorded meetings.

information associated with the PIN includes the email address ███████████████████████

14. A second cooperating witness ("CW-2")[2] has informed the Government, in substance and in part, that:

   a. A Honduran national ("Individual-3") introduced CW-2 to Hernandez in approximately 2003, and Individual-3 acted at times as a conduit for communications relating to drug trafficking between CW-2 and Hernandez until at least approximately 2009.

   b. CW-2 participated in drug-trafficking activities with another Honduran national ("Individual-4") between approximately 2005 and approximately 2016.

15. Based on information from the Department of Homeland Security, I know that:

   a. Hernandez has listed the email address ████████████████ at least one application for travel documents.

   b. Individual-2 has listed the following email addresses on at least one application for travel documents: ██████████████, ██████████████ and ██████████████

   c. Individual-4 has listed the email address ██████████████ on at least one application for travel documents.

16. Based on information from Google, I know that:

   a. The subscriber information for ██████████████ includes the email address ██████████████

---

[2] CW-2 is currently in custody based on charges relating to participation in a conspiracy to import cocaine into the United States and related weapons offenses. CW-2 is providing information and assistance to the Government in an effort to obtain a cooperation agreement and, ultimately, leniency at sentencing. Information provided by CW-2 has proven to be reliable in that some of the information has been corroborated by other witness accounts and consensually recorded meetings.

b. The subscriber information for ▓▓▓ includes the email address ▓▓▓

17. Based on information from Apple, I know that:

a. The email address ▓▓▓ is linked to an Apple account with Apple logins ▓▓▓ and ▓▓▓, and Apple ID ▓▓▓

18. Based on information from Facebook, I know that a Facebook page with a public username that appears to be associated with Individual-3 has subscriber information that includes the email address ▓▓▓.

19. Based on the foregoing, I respectfully submit that there are specific and articulable facts showing that there are reasonable grounds to believe that the records sought from the Target Accounts are relevant and material to the ongoing investigation of Hernandez and others. Specifically, individuals engaged in drug-trafficking activities and weapons offenses store records relating to their illegal activities and to persons involved with them in those activities in electronic accounts such as the Target Accounts. Such records can include, for example, logs of online "chats" with co-conspirators; email correspondence; contact information of co-conspirators, including telephone numbers, email addresses, and identifiers for instant messaging and social medial accounts; and personal identification data, including bank account numbers, credit card numbers, and names, addresses, telephone numbers. Individuals engaged in criminal activities often store such records in order to, among other things, (1) keep track of co-conspirator's contact information; (2) keep a record of illegal transactions for future reference; (3) keep an accounting of illegal proceeds for purposes of, among other things, dividing those proceeds with co-conspirators; and (4) store stolen data for future exploitation

## Request

20. The Government further requests, pursuant to 18 U.S.C. § 2705(b), that this Application and the proposed Orders be sealed by the Court until such time as the Court directs otherwise, and that the Providers be ordered not to notify any person (including the subscribers associated with the Target Accounts) of the existence of the Orders for a period of one year from the date of the Orders, subject to extension if necessary. Targets of this investigation are known to have participated in physical intimidation or threatening of other individuals in furtherance of and to conceal their criminal activities, and alerting these targets to the existence and scope of the investigation may lead the targets to endanger the life or physical safety of others. *See* 18 U.S.C. § 2705(b)(1), (4). In addition, targets of this investigation appear to have the financial means that would facilitate their flight from prosecution, and have traveled internationally in the past to jurisdictions where extradition to the United States for purposes of prosecution is unlikely or impossible. *See* 18 U.S.C. § 2705(b)(2), (5).

21. Consequently, there is reason to believe that notification of the existence of the Orders will seriously jeopardize the investigation, including by giving targets an opportunity to flee or avoid prosecution, or tamper with evidence, including electronically stored information that is easily tampered with or destroyed. Accordingly, the Government believes that one year is an appropriate additional delay of notice period for the Court to order, subject to extension upon further application if necessary.

22. No prior request for the relief sought herein has been made.

23. I declare under penalty of perjury that the foregoing factual assertions are true and correct to the best of my knowledge and belief.

Dated: New York, New York
       December 12, 2018

_____
Emil J. Bove III
Assistant United States Attorney
212-637-2444