AO 106 (SDNY Rev. 01/17) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

**18 MAG 10502**

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.
See Attached Affidavit and its Attachment A )
)
)

## APPLICATION FOR A SEARCH AND SEIZURE WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the ____Southern____ District of ____New York____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attached Affidavit and its Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section(s) | Offense Description(s) |
|---|---|
| Title 21, United States Code, Sections 841, 843, 846, 952, 959, 963; Title 18, United States Code, Sections 924, 956, 957 | Drug-trafficking offenses; offenses relating to the use of communication facilities in furtherance of drug-trafficking crimes; money laundering offenses; weapons offenses |

The application is based on these facts:

See Attached Affidavit and its Attachment A

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brian Fairbanks, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/16/18

_____
*Judge's signature*

City and state: New York, NY

Hon. James L. Cott, USMJ, SDNY
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of the Application of the United States Of America for a Search and Seizure Warrant for Two Cellular Cellphones Seized In Connection With the Arrest of Juan Antonio Hernandez Alvarado, a/k/a "Tony Hernandez," on November 23, 2018

**TO BE FILED UNDER SEAL**

**Agent Affidavit in Support of Application for Search and Seizure Warrant**

SOUTHERN DISTRICT OF NEW YORK) ss.:

BRIAN FAIRBANKS, being duly sworn, deposes and says:

## I. Introduction

### A. Affiant

1. I am a Special Agent of the Drug Enforcement Administration ("DEA") and have been employed as a Special Agent since approximately 2009. During my tenure as a Special Agent with the DEA, I have conducted and participated in numerous investigations of criminal activity, including the investigation of international narcotics, money laundering, and weapons trafficking offenses and of related crimes of violence. During the investigation of these cases, I have participated in the execution of numerous search warrants involving electronic evidence, including numerous searches of electronic devices.

2. I make this Affidavit in support of an application pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the electronic devices specified below (the "Subject Devices") for the items and information described in Attachment A. This affidavit is based upon my personal knowledge; my review of documents and other evidence; my conversations with other law enforcement personnel; and my training, experience and advice received concerning the use of computers in criminal activity and the forensic analysis of electronically stored information ("ESI"). Because this affidavit is being submitted for the limited

purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

B. **The Subject Devices**

3. The Subject Devices are particularly described as:

    a. The white Apple iPhone seized from Juan Antonio Hernandez Alvarado, a/k/a "Tony Hernandez," at Miami International Airport on November 23, 2018.

    b. The black Samsung SM-G9650 seized from personal effects possessed by Juan Antonio Hernandez Alvarado, a/k/a "Tony Hernandez," at Miami International Airport on November 23, 2018.

4. Based on my training, experience, and research, I know that the Subject Devices have capabilities that allow them to serve as a wireless telephone capable of, *inter alia*, making voice calls and exchanging electronic messages, digital camera, portable media player, GPS navigation device, and Internet web browser.

5. The Subject Devices are presently located in the Southern District of New York.

C. **The Subject Offenses**

6. For the reasons detailed below, I believe that there is probable cause to believe that the Subject Devices contain evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841, 846, 952, 959, 963 (drug-trafficking offenses); Title 21, United States Code, Section 843 (offenses relating to the use of communication facilities in furtherance of drug-trafficking crimes); Title 18, United States Code, Sections 956 and 957 (offenses relating to money laundering); and Title 18, United States Code, Sections 924 (offenses relating to the use of firearms and destructive devices in furtherance of drug-trafficking crimes).

2

2017.08.02

## II. Probable Cause

### A. Probable Cause Regarding Subjects' Commission of the Subject Offenses

7. Juan Antonio Hernandez Alvarado, a/k/a "Tony Hernandez" ("Hernandez"), is a former member of the National Congress of Honduras, the brother of the current President of Honduras, and a large-scale drug trafficker who worked with other drug traffickers in, among other places, Colombia, Honduras, and Mexico, to import cocaine into the United States.

8. Hernandez is charged in three counts in Superseding Indictment S2 15 Cr. 379 (PKC) with violations of Title 21, United States Code, Section 963, Title 18, United States Code, Section 924(c), and Title 18, United States Code, Section 924(o). As set forth in the Superseding Indictment, which is attached hereto and incorporated by reference, a grand jury in this District has found that:

    a. From at least in or about 2004, up to and including in or about 2016, Hernandez was involved in processing, receiving, transporting, and distributing multi-ton loads of cocaine that arrived in Honduras via planes, go-fast vessels, and, on at least one occasion, a submarine. Hernandez had access to cocaine laboratories in Honduras and Colombia, at which some of the cocaine was stamped with the symbol "TH," *i.e.*, "Tony Hernandez." Hernandez also coordinated and, at times, participated in providing heavily armed security for cocaine shipments transported within Honduras, including by members of the Honduran National Police and drug traffickers armed with, among other weapons, machineguns.

    b. As part of his drug-trafficking activities, Hernandez and his co-conspirators bribed law enforcement officials for sensitive information to protect drug shipments and solicited large bribes from major drug traffickers for Hernandez and on behalf of one or more high-ranking Honduran politicians.

3

c. In or about February 2014 in Honduras, Hernandez met with Devis Leonel Rivera Maradiaga, the former leader of a violent Honduran drug-trafficking organization known as the *Cachiros*, for a meeting set up by, among others, a former member of the Honduran National Police. During part of that meeting, which was video and audio recorded, Hernandez agreed to help Rivera Maradiaga by causing Honduran government entities to pay money owed to one or more *Cachiros* money-laundering front companies in exchange for kickback payments from Rivera Maradiaga. Rivera Maradiaga paid Hernandez approximately $50,000 during the meeting.

9. Based on conversations with other agents participating in this investigation, my review of reports related to this investigation, and my review of information from law enforcement databases, I know that:

a. On November 23, 2018, the DEA arrested Hernandez based on the charges in the Superseding Indictment at Miami International Airport.

b. The Subject Devices and small quantity of Mexican currency, among other things, were seized from Hernandez in connection with the arrest.

c. Following his arrest, Hernandez waived his *Miranda* rights and told DEA agents, in substance and in part, that he had recently traveled to, among other places, Mexico to meet the family of a friend named "Carlos" who was involved in transactions in Mexico and Honduras involving real estate in Mexico. Based on my training and experience, I know that drug traffickers sometimes launder drug proceeds by using drug proceeds to purchase assets such as real estate.

d. Prior to his arrest, Hernandez traveled to the United States from Honduras with another man ("Individual-1"), and they stayed in Houston, Texas, before flying to Miami on

4

November 23, 2018. Individual-1 told the DEA on November 23, 2018, in substance and in part, that an associate ("Individual-2") had invited Individual-1 and Hernandez to Houston.

    e.    According to a DEA database, A telephone number associated with Individual-2 has been in contact with a man based in the Northeast who was arrested in 2017 and charged with a money laundering offense, but the charge was subsequently dismissed.

    f.    Individual-1 consented to a search of his phone on November 23, 2018. The phone contained a contact with a telephone number that was saved as "Carlos Mexico." According to the same DEA database, the telephone number associated with the "Carlos" contact in Individual-1's phone has been in contact with the target of a DEA investigation targeting cocaine-distribution activities in Atlanta and Houston.

### B. Probable Cause Justifying Search of the Subject Devices

10.    Based on my training and experience, I know that:

    a.    Like individuals engaged in any other kind of activity, individuals who engage in drug-trafficking activities and weapons offenses store records relating to their illegal activity and to persons involved with them in that activity on electronic devices such as the Subject Device. Such records can include, for example, logs of online "chats" with co-conspirators; email correspondence; contact information of co-conspirators, including telephone numbers, email addresses, and identifiers for instant messaging and social medial accounts; personal identification data, including bank account numbers, credit card numbers, and names, addresses, telephone numbers; and records of illegal transactions using stolen financial and personal identification data. Individuals engaged in criminal activity often store such records in order to, among other things, (1) keep track of co-conspirator's contact information; (2) keep a record of illegal transactions for future reference; (3) keep an accounting of illegal proceeds for purposes of, among other things, dividing those proceeds with co-conspirators; and (4) store stolen data for future exploitation.

b. Computer files or remnants of such files can be recovered months or even years after they have been created or saved on an electronic device such as the Subject Devices. Even when such files have been deleted, they can often be recovered, depending on how the hard drive has subsequently been used, months or years later with forensics tools. Thus, the ability to retrieve from information from the Subject Devices depends less on when the information was first created or saved than on a particular user's device configuration, storage capacity, and computer habits.

11. Based on the foregoing, I respectfully submit there is probable cause to believe that Hernandez engaged in drug-trafficking offenses, related weapons offenses, and financial transactions intended to conceal and promote these offenses, and that evidence of this criminal activity is likely to be found on the Subject Device.

### III. Procedures for Searching ESI

#### A. Review of ESI

12. Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will review the ESI contained on the Subject Devices for information responsive to the warrant.

13. In conducting this review, law enforcement may use various techniques to determine which files or other ESI contain evidence or fruits of the Subject Offenses. Such techniques may include, for example:

- surveying directories or folders and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

2017.08.02

- conducting a file-by-file review by "opening" or reading the first few "pages" of such files in order to determine their precise contents (analogous to performing a cursory examination of each document in a file cabinet to determine its relevance);

- "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and

- performing electronic keyword searches through all electronic storage areas to determine the existence and location of search terms related to the subject matter of the investigation. (Keyword searches alone are typically inadequate to detect all information subject to seizure. For one thing, keyword searches work only for text data, yet many types of files, such as images and videos, do not store data as searchable text. Moreover, even as to text data, there may be information properly subject to seizure but that is not captured by a keyword search because the information does not contain the keywords being searched.)

14. Law enforcement personnel will make reasonable efforts to restrict their search to data falling within the categories of evidence specified in the warrant. Depending on the circumstances, however, law enforcement may need to conduct a complete review of all the ESI from the Subject Devices to locate all data responsive to the warrant.

### B. Return of the Subject Device

15. If the Government determines that the Subject Devices are no longer necessary to retrieve and preserve the data on the device, and that the Subject Devices are not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), the Government will return the Subject Devices, upon request. Computer data that is encrypted or unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses.

2017.08.02

## IV. Conclusion

16. Based on the foregoing, I respectfully request the court to issue a warrant to seize the items and information specified in Attachment A to this affidavit and to the Search and Seizure Warrant.

*Brian Fairbanks*
Brian Fairbanks
Special Agent, DEA

Sworn to before me on
December 11, 2018

HON. JAMES L. COTT
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK