UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

vs.

JUAN ANTONIO HERNANDEZ ALVARADO

S2 15-cr-379 (PKC)

**REPLY IN SUPPORT OF
MOTION TO SUPPRESS POST-ARREST STATEMENT
FOR VIOLATING THE NO-CONTACT RULE**

*Summary*

The government's opposition forthrightly discloses previously unavailable toll records, emails and a DEA-6, all of which show that the arresting agents knew that attorney Retureta represented defendant Hernandez before the interrogation. We have consolidated the government's recent disclosures with the facts from our motion into the following timeline, with hyperlinks to exhibits that are currently available on Pacer:

| TIME | EVENT | EVIDENCE |
|---|---|---|
| | **OCT 2016** | |
| | • Retureta exchanges text messages with AUSA and DEA Agents Fraga and Gonzalez regarding proffer session in Miami.<br>• Proffer session in Miami attended by Hernandez, Retureta, AUSA, and DEA Agents Fraga & Papadopoulos. | Retureta's Texts<br><br>USA Br. [57:7] |
| | **MAY 2017** | |
| | • Retureta emails AUSA asking for a call "regarding Tony Hernandez."<br>• AUSA responds to Retureta's email address proposing time for the call. | Retureta's Emails |
| | **OCT 2017** | |
| | Retureta & Agent Fraga exchange texts about meeting for lunch that same day. | AUSA Emails |
| | **2018**<br>**MON NOV 19** | |
| | Hernandez flies from Honduras to Houston<br>on a R/T ticket returning Friday Nov 23 | USA's PTD Letter |
| | **WEDS NOV 21** | |
| | Grand jury returns sealed indictment. | Indictment |
| | **FRIDAY NOV 23** | |
| 9:37 (approx.) | Hernandez and travel companion (Pacheco) land at Miami from Houston. | DEA 6<br>USA PTD Let |
| 10:00 | Agents interview Pacheco. | DEA 6 |
| 11:10 | • Agents place Hernandez in interview room.<br>• Hernandez "specified that he told his lawyer over a year ago, that he wanted to cooperate and he ([his]lawyer) told him that he would speak with prosecutors but never notified Hernandez."<br>• Hernandez states "he had not spoken to 'Manny' in over a year but would like to call him first." | DEA 6 |
| 11:25-:36 | AUSAs call Agent. (12 mins)<br>AUSAs "gave permission" to phone Retureta | Toll records<br>DEA 6 |
| 11:36 | Agent calls Retureta's cell - no answer – no message | Toll records |
| 11:38 | Agent calls Retureta's cell - no answer – no message | Toll records |
| 11:40-:42 | Agent calls AUSAs | Toll records |
| 11:50:52 | AUSAs call Agent | Toll records |
| 11:54 | Agent calls Retureta's cell - no answer – no message | Toll records |
| | • Despite three successive calls so Hernandez could speak with his lawyer, the Agent asks Hernandez "if presently had [sic] legal representation;" and | DEA 6 |

| | | |
|---|---|---|
| | • Hernandez "stated that *he did not know*." | |
| 12:18-:21 PM | Agent calls AUSAs (3 mins) | Toll records |
| 12:20 PM | Hernandez fingerprinted | DEA 6 |
| | Agents interrogate Hernandez off-video | DEA 6 |
| 12:35 PM | Agents begin recording Hernandez' post-arrest interrogation | Transcript |
| 12:37 PM | Waiver signed | Waiver |
| 1:53 PM | Interview ends | Transcript |
| 1:56-2:08 PM | Agents call AUSAs (22 mins) | Toll records |
| 2:41 PM | After hearing from Hernandez' family of the arrest, Retureta emails Agent Fraga asking, is he "busy with Tony Hernandez?" No response. | Fraga Email |
| 2:53 PM | Retureta emails AUSA. Advises, "I continue to represent [Hernandez]," that "he does not wish to speak without defense counsel present …." | AUSA Emails |
| 3:17 PM | Retureta emails Agent Gonzalez asking whether Hernandez is detained in Miami. "Please note that I continue to represent him and I ask that there be no questioning outside my presence." | Gonzalez Emails |
| 3:27-:33 PM | Agents call AUSAs (5 mins) | Toll records |
| 3:43 PM | AUSA responds to Retureta's 2:53 PM email confirming transfer to SDNY. No mention of interviewing Hernandez without Retureta. | AUSA Emails |
| 8:29-:49 PM | Agents call AUSA LaRoche (20 mins) | Toll records |
| | **SAT NOV 24** | |
| 11:33 | Retureta emails Agent Gonzalez, "I met with Tony this morning in Miami. I appreciate your professionalism with [Tony]." | Gonzalez Emails |
| 2:37 PM | Retureta emails AUSA, asking for copy of indictment | AUSA Emails |
| 4:20 PM | AUSA emails Retureta sealed indictment. | AUSA Emails |
| 4:38 PM | Retureta emails AUSA that "no other attorney represents or has received authorization to visit Tony" and that he "hope[s] to stop" other attorneys "hoping to secure representation of Tony" from visiting him. | AUSA Emails |

| | | |
|---|---|---|
| | **MON NOV 26** | |
| | • Hernandez' initial appearance in S.D. Fla.<br>• Retureta enters temporary appearance as counsel.<br>• Indictment unsealed. | Doc. 17 |
| | **WEDS NOV 28** | |
| | Retureta files motion for SDNY PHV admission "as retained defense counsel of record" | Doc. 18 |

*Discussion*

The agents controlled the date and time of the arrest and there was no emergency necessitating an immediate uncounseled interrogation. The agents and the prosecutors knew Retureta personally from this case and others. They knew his email address, office phone and cell number. They had previously met with, called, texted and emailed Retureta about his client Hernandez in this same investigation.

But the no-contact rule stood in the way of an uncounseled custodial interrogation. If Retureta were to refuse permission, the agents would lose this valuable opportunity. So, they called his cell three times within 20 minutes, each time going directly to voicemail. They did not leave a message, however. Nor did they call the general line of his office (listed on his email footer and available on his website), ask to speak with an office assistant or his law partner, or even send him an email. They did not apply to the Court for permission. Except in the most perfunctory manner, they did not even wait for Retureta to call back. (Which would have been magic, since the agents did not leave Retureta any type of message.) Instead, less than 40 minutes after their last unanswered call to Retureta's cell, the agents set out to convince his client to waive his presence and begin their interrogation. They succeeded.

As summarized on **Annex A**, attached hereto, the agents accomplished this by, at the outset, giving Hernandez flawed legal advice that, having not spoken with Retureta for a year, he was "not your lawyer *today*" and "you do not have representation *now*." Throughout the interview, Hernandez repeatedly referred to Retureta, his wish that Retureta would "join the process" and his

many discussions with Retureta about continuing the process of cooperating with the government that he and Retureta had begun in 2016 in Miami.

Worse, immediately after Hernandez signed the *Miranda* waiver, the agents proceeded to elicit two privileged communications from him and then later in the interview, four more.[1] In one instance, the interrogating agent even asked Hernandez to disclose Retureta's 2017 legal strategy for cooperation. ("You said you wanted to begin this process of cooperating one year ago. ... What information were you thinking of cooperating with?"). True, as the government points out, at the end of the interview Hernandez agreed ("*no tengo*") with "at this time you do not have a lawyer," which was the last of six propositions contained in the agent's final, single, painfully compound, leading question.

Beyond the above disclosures, the government's response contains a glaring omission about the most critical issue. It wryly argues that Hernandez was not a true client of Retureta ***but leaves out what instructions the AUSAs gave to the DEA about contact with a represented party in their several calls just before and during the interrogation***.

The just-produced DEA-6 likewise omits these critical instructions, stating only that the AUSAs "gave permission" ***to call Retureta*** (but nothing about obtaining permission to interview his client). What prompted permission to call this lawyer who the government believed did not really represent this defendant?

Compounding this omission, both the government's response and the DEA-6 fail to mention the 12:18 PM 3-minute call from the DEA to the AUSAs

---

[1] *See* **Annex A** hereto, excerpting the transcript of the videotaped portion of the interrogation. The full transcript was filed with our letter motion. See Doc. 55-1.

(they do mention the other calls). That critical conversation took place between the final unanswered call to Retureta and the start of the DEA's post-arrest interrogation. On that call,

- Did the AUSAs green-light the interrogation?

- Did they reiterate the requirement of Retureta's permission?

- Or did the agents simply tell the AUSAs that they could not reach Retureta and intended to transport Hernandez to the DEA field office for booking and processing, without substantive interrogation?

Put another way, one of two things happened here:

(1) the AUSAs instructed the DEA not to interview Hernandez without Retureta's permission and the DEA did it anyway; or

(2) the AUSAs gave permission for the interview.

The latter (#2) is unlikely because it would be an inconceivable disregard for the no-contact rule and such express permission would ordinarily have been documented in the DEA-6. (After all, the DEA-6 was careful to mention this detail about receiving permission to call Retureta, something the agents evidently never needed before according to their informal text messages with him in 2016 and 2017. Why not mention something as important as giving permission to interview the uncounseled defendant himself?)

The latter is also unlikely because if the AUSAs actually concluded (wrongly;[2] but concluded anyway) that Retureta no longer represented

---

[2] *See* Retureta Decl., ¶ 2 (affirming his representation of Hernandez "continuously from 2016 through February 2019). *Cf.* Model R. Prof. Cond. 1.16(d); In re Payne, 707 F.3d 195 (2d Cir. 2013) ("counsel may not end the representation of a client without taking affirmative action"); In re Fengling Liu, 664 F.3d 367 384 (2d Cir. 2011) ("A lawyer may not withdraw from employment 'until the lawyer has taken steps to the extent reasonably

Hernandez and green-lit the interrogation, they surely would have warned the agents to take every conceivable precaution to avoid eliciting privileged attorney-client communications during the interrogation. We know this did not happen because:

(a) the agents never warned Hernandez not to make such disclosures; and

(b) six times during the interview, ***uncounseled Hernandez disclosed privileged communications with his lawyer***.

Accordingly, we must conclude that the AUSAs complied with their ethical duties but the well-meaning agents, perhaps out of confusion, excitement or inexperience, did not recognize the gravity of violating the no-contact rule.

The government's response writes around this problem, gingerly avoiding disclosure of any disconnect between the AUSAs' instructions and the DEA's execution. Given the professional consequences of this issue and our obvious reluctance to accuse agents of misconduct or neglect, or call our opposing counsel to the stand, we emailed the AUSAs last week asking them to simply tell us what really happened so we could stipulate to a timeline. They declined. Accordingly, a hearing will be necessary.

### *Legal Analysis*

A half-hearted bow towards getting a lawyer's permission to conduct an uncounseled custodial interrogation of his client is not the same as getting permission. It is irrelevant whether Hernandez waived his lawyer's presence. It

---

practicable to avoid foreseeable prejudice to the rights of the client, including giving due notice to the client ....").

was not up to him. The no-contact rule "applies even though the represented party initiates or consents to the communication."[3]

The United States District Court in *U.S. v. Koerber*, 996 F. Supp.2d 1207 (D. Utah 2013), suppressed the defendant's uncounseled statement under indistinguishable circumstances. The Court found that, through correspondence in March 2007 and March 2008, the government knew that the defendant was represented by counsel such that a year later (February 2009), it should not have interviewed him without his lawyer's permission.

That timeline is indistinguishable. Here, the government knew from the October 2016 Miami meeting and the March 2017 emails that Hernandez was still represented in 2018. Just minutes after the interview, Retureta reiterated the relationship and denied permission for an interview in emails to the agent and then to the AUSA.

Whatever position the government takes today, the day after Hernandez' arrest (Saturday), the AUSA was so confident that Retureta was his lawyer that the AUSA emailed him a sealed Grand Jury indictment; otherwise, a Rule 6 violation. That same day, Retureta conducted a legal visit with Hernandez at FDC-Miami. And that Monday, Retureta attended Hernandez' initial appearance, announced himself as attorney of record, executed the S.D. Florida temporary appearance form and filed it with the Court. Two days later (Wednesday), Retureta noticed his appearance for Hernandez in this S.D.N.Y. case.

---

[3] N.Y. Rule Prof. Cond. 4.2(a), cmt. 3.

The agent's three calls to Retureta's cell phone, with no serious effort to reach him or leave a message or permit time for a return call, hearkens to the *Koerber* court's comment that "the way it was approached at least allows an inference that [the agents] didn't want to get that response, they wanted to be coy and say, can we justify saying that he's not represented so we can interview him."[4] *Koerber* excluded the statement under the Due Process Clause of the Fifth Amendment (although not the Sixth Amendment, because Koerber was not in custody at the time of the interrogation) because the Department of Justice failed to follow its own procedures and violated 28 U.S.C. 530B ("McDade Amendment" or "Citizen's Protection Act of 1999").[5]

We cannot find a single federal case reaching the opposite result under the circumstances presented here -- denying suppression of a post-indictment custodial interrogation of a party without the permission of counsel the agents knew about. Perhaps that is because, given the clear command of the Justice Department Manual, uniform state bar rules and a federal statute all prohibiting such conduct, it should never happen.

---

[4] *Id*. at 1223.

[5] *Id*. at 1242 (holding that under the Protection Act, "a prosecutor's failure to comply with the applicable no-contact rule is now also a violation of federal statute" and observing that the statute applies with equal force to "an investigative agent acting under the attorney's supervision," citing 28 CFR § 77.4 and the alter-ego doctrine, discussed in our letter motion, DE 55:8 & n.5). See also, United States v. Esformes, 16-20549-CR, 2018 WL 5919517, at *17 (S.D. Fla. Nov. 13, 2018) ("[W]hen government lawyers are conducting covert investigations, they as well as courts and other lawyers need and, are entitled to have, a bright-line rule separating ethical from unethical behavior. … That line is the arrest or indictment of the represented person.").

Recently, the United States District Court for the Eastern District of New York declined to suppress the defendant's pre-indictment (non-custodial) statements to the FBI based on an alleged violation of the no-contact rule. *See* United States v. Walker, 18-CR-087 (JMA), 2019 WL 1876873, at *7 (E.D.N.Y. Apr. 26, 2019). In that case, however, the Court found no Rule 4.2 violation on facts that are readily distinguishable:

> (a) the prosecutor **did not know** that the defendant was represented by counsel in the same matter;
>
> (b) the interview was ***pre***-indictment;
>
> (c) after the defendant asked to speak with his lawyer, "the FBI agents merely showed him certain evidence and **advised him, on more than [one] occasion not to comment**."[6]

---

[6] *Id.* at *7. The Court then added without analysis or discussion dictum that "even if Rule 4.2 was violated here, based on the facts set forth above, I find, in my discretion, that this is not a case where suppression or dismissal is warranted to remedy any such violation." *Id.* Like *Walker*, there are numerous cases that decline to find a Rule 4.2 or § 530B violation when the interview is pre-indictment and non-custodial. *See, e.g.,* United States v. Sabean, 2016 WL 5721135, at *6-7 (D. Me. Oct. 3, 2016) (citing such cases and finding that Rule 4.2 was not violated by an "overt, preindictment, noncustodial interview" that "took place at the Defendant's place of business and at his convenience"). Those cases are inapposite because Hernandez' was a post-indictment custodial interrogation about the same matter for which the government knew the defendant had a lawyer.

*Conclusion*

Some prefer to ask for forgiveness than for permission. There is no way to look at this case except as a violation of New York and Justice Department no-contact rules and therefore, 28 U.S.C. § 530B, warranting suppression. This was a post-indictment custodial interrogation, at a time and place selected by the government, of a defendant who was long-represented by a lawyer, who was well-known to the government to represent him, in the same matter. Only that lawyer had the right to waive his presence.

The government's conduct shows that it knew about the representation -- by calling Retureta three times and, after the interview, emailing the sealed indictment to him. Those calls, without messages and followed almost immediately by interrogation, were mere feints at permission. But no matter the government's good or bad faith, Rule 4.2, Justice Department guidelines and the Citizen's Protection Act forbade interrogation without prior permission from Retureta. A hearing on the prosecutors' instructions to the agents will only underscore what is now obvious: the prosecution team not only had every objective reason to believe, but in fact they subjectively believed that Hernandez had a lawyer when they arrested him.

This conduct requires suppression (and an apology).

                                      Respectfully submitted,

                                      **TEIN MALONE PLLC**

                                      By: /s/ *Michael R. Tein*
                                            Michael R. Tein, Esq.
                                            Fla. Bar No. 993522
                                            Mass. BBO No. 563029
                                            Admitted *pro hac vice*

[tein@teinmalone.com](mailto:tein@teinmalone.com)
T. Omar Malone, Esq.
N.Y. Bar No. TM7977
3059 Grand Avenue, Suite 340
Coconut Grove, Florida 33133
Tel.: 305.442.1101

**Certificate of Service**

I hereby certify that a copy of this reply was served via CM/ECF on June 11, 2019.

   */s/ Michael R. Tein*

# ANNEX A

# EXCERPTS FROM HERNANDEZ' POST-ARREST INTERROGATION

*At the start of the video, the agent tells Hernandez that he called Retureta "but he did not answer" and that "you do not have legal representation now" but "you will be talking to a lawyer in the future"*

| | | |
|---|---|---|
| MV1 | Hoy es, hoy es el veintitrés de noviembre de dos mil dieciocho. Son las doce y media, doce y treinta y cinco de la tarde. Sólo quiero que ... repetir aquí lo que usted me dijo anteriormente. Que usted quiere proceder y dar una declaración y hablar con nosotros. No tiene representación legal hoy ... ahora. Eh ... Vas a hablar con un abogado en el futuro, pero quieres empezar este proceso ahora. | Today is, is November the twenty-third, two thousand and eighteen. It is half past twelve, twelve thirty-five in the afternoon. I just want to ... to repeat here what you told me earlier. That you wish to proceed and make a statement and talk with us. You do not have legal representation today ... now. Huh ... You will be talking to a lawyer in the future, but you wish to start this process now. |
| MV2 | Así es. Quiero empezar. | That's right. I want to start. |
| MV1 | Y llamamos varias veces al señor Retureta pero no contestó. Pero todavía quieres seguir adelante. | And we called Mr. Retureta several times but he did not answer. But you still wish to go ahead. |
| MV2 | Quiero. | I do. |

\* \* \*

*The agent then instructs Hernandez that Retureta "is not your lawyer today … until you talk to him again." Hernandez reiterates that Retureta was "handling the matter" but he "lost touch with him." He adds, "Let's hope that he will join the process."*

| | | |
|---|---|---|
| MV1 | ¿Cuándo es la última vez que usted habló con el abogado? | When was the last time that you spoke with the lawyer? |
| MV2 | Creo que ... hace un año. | I think it was ... one year ago. |
| MV1 | ¿Hace un año? | One year ago? |
| MV2 | Sí. (Unintelligible) | Yes. (Unintelligible) |
| MV1 | Entonces no es tu abogado hoy en día ... hasta que usted hable con él de nuevo. | Then he is not your lawyer today … until you talk to him again. |
| MV2 | Hasta que hable con él de nuevo. Él es el que estaba llevando el tema primero y ... | Until I talk to him again. He is the one who was handling the matter first … |

| | | | |
|---|---|---|---|
| MV1 | Ajá | | Aha |
| MV2 | ... pero he perdido el contacto con él. Esperemos que se ... que se agregue él al proceso. | | ... but I have lost touch with him. Let's hope that he ... that he will join the process. |

* * *

*Immediately after the reading and waiving of rights, the agent elicits two privileged communications between Hernandez and his lawyer:*

| | | | |
|---|---|---|---|
| MV1 | Y creo que dijiste algo alrededor de que quieres empezar este proceso de cooperación de ... ya hace tiempo. | | And I believe that you said something about your wishing to start this cooperation process sin... since some time ago. |
| MV2 | Sí, lo que hablaba con el abogado Retureta era que yo estaba dispuesto a venirme para acá por si ustedes querían seguir teniendo algunas aclaraciones o que yo siguiera respondiendo algunas interrogantes de ustedes. Y en eso, pues, me dijo el abogado: "Esperemos, que ellos nos van a avisar". Y pasó el tiempo y ... perdí contacto con el abogado y ... y pasó lo de hoy. | | Yes, what I was discussing with Attorney Retureta was that I was prepared to come over here in case you all wanted to continue having some clarifications or for me to continue answering questions from you all. And at that time, why, the lawyer told me: "Let's wait; they will let us know." And time went by and … I lost touch with the lawyer. And … and what happened today happened. |

* * *

*Four more times, Hernandez answers questions by revealing privileged communications:*

| | | | |
|---|---|---|---|
| MV2 | Sí, era lo que yo le decía a Manny. "Manny", le digo, "¿en qué participé yo en esos trasiegos, en lo que sea? No sé. Contámelo. Pues sí, yo quisiera saber de qué ... con | | Yes, that's what I would tell Manny. "Manny," I says to him, "how did I participate in those comings and goings, in whatever? I don't know. You tell me. |

* * *

| | | | |
|---|---|---|---|
| MV2 | Sí. Era por eso cuando yo le decía Manny: "Manny, la gente sabe porque salieron en los medios diciendo que yo había venido." Que dijeron que nunca vine. | | Yes. That's why when I was telling Manny: "Manny, people know because they went on the media saying that I had come over." That they said I never came. |

* * *

| | | | |
|---|---|---|---|
| MV2 | Yo, por eso, desde la vez pasada ... "Yo quiero saber", le digo a Manny. "¿Qué es | | That's why, since the last time, I … "I want to know," I says to Manny. "What can I |

| | | |
|---|---|---|
| | lo que puedo apoyar? ¿De qué es de lo que me están acusando? Para poder ..." | support? What I am being accused of? To be able to ..." |

* * *

| | | |
|---|---|---|
| MV2 | Sí, pero como le repito, no, no puedo ... no puedo ... Y... Y lo mismo les dije a ... | Yes, but as I have told you before, I cannot ... I cannot ... And I said the same thing to … |

* * *

***In one instance, the agent even asks Hernandez to explain his legal strategy for cooperation:***

| | | |
|---|---|---|
| MV1 | Usted dijo que quería empezar este proceso de colaboración hace un año ... | You said you wanted to begin this process of cooperation one year ago ... |
| MV2 | Sí | Yes |
| MV1 | ¿Con qué información estabas pensando colaborar? | What information were you thinking of cooperating with? |

* * *

***The agent concludes the interview stating that Hernandez literally has no lawyer "at this time," which truism Hernandez confirms:***

| | | |
|---|---|---|
| MV1 | Sin ninguna presión. Usted lo hizo voluntariamente. Confirmaste que no tenías ningún abogado. Piensas a ... llamar al abogado, a consultar, a buscar un abogado, pero en ese momento no tienes abogado. | With no pressure. You did it voluntarily. You confirmed that you didn't have a lawyer. You're thinking of ... calling the lawyer, to consult, to look for a lawyer, but at this time you do not have a lawyer. |
| MV2 | No tengo. | I do not. |