JAHTHER1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                          15 CR 379 (PKC)

JUAN ANTONIO HERNANDEZ
ALVARADO,

               Defendant.

------------------------------x

                                 New York, N.Y.
                                 October 17, 2019
                                 10:00 a.m.

Before:

                    HON. P. KEVIN CASTEL,

                                   District Judge

                         APPEARANCES

GEOFFREY S. BERMAN,
     United States Attorney for the
     Southern District of New York
EMIL J. BOVE, III
AMANDA HOULE
JASON RICHMAN
     Assistant United States Attorneys

OMAR MALONE
MICHAEL R. TEIN
     Attorneys for Defendant

ALSO PRESENT:  HUMBERTO GARCIA, Interpreter (Spanish)
               NATHAN RHODES, Interpreter (Spanish)
               BRIAN FAIRBANKS, DEA
               MORGAN HURST, Paralegal, USAO

JAHTHER1                    Charge

 1          (Jury not present)

 2          THE COURT:  Good morning.  This morning, in resuming

 3  the jury instructions, I will go through the topics as

 4  indicated in the table of contents that I went through

 5  yesterday to refresh the jury's recollection.

 6          When we get to sympathy or bias, I propose to give

 7  this additional instruction to the jury:  All parties to this

 8  case are entitled to a trial free of passion and prejudice.  No

 9  one's view on the degree to which cocaine is harmful to users

10  and others is relevant to any issue in this case and must not

11  enter into your consideration of whether the government has

12  proven defendant's guilt as to any charge.

13          Let me hear first from the government.  Any objections

14  to that instruction?

15          MR. BOVE:  No, Judge.

16          THE COURT:  Let me hear from the defendant.

17          MR. MALONE:  No objection, Judge.

18          THE COURT:  All right.  Very good.  We'll do that.

19  Once our jurors have all arrived, we'll resume.  I'm going to

20  have that marked as the next court exhibit, and we'll also have

21  the court exhibit marked, which is the charge from yesterday

22  with that one line deleted, which will be the charge that will

23  go into the jury room.

24          We're in recess for a few moments.

25          (Recess taken)

1            (Jury present)

2            THE COURT:  Good morning, ladies and gentlemen.  I

3    hope you had a pleasant rest last night, and hopefully you

4    didn't get wet on the way home.  I know you probably did.  I

5    know I did.  When it rains, it rains on all of us.

6            In a moment I'm going to pick up where I left off

7    yesterday, but I'm briefly going to review the topics that I

8    covered yesterday.  And I should tell you that there is no

9    difference between the instructions I give today versus those

10   yesterday in terms of their importance.  They're all important,

11   and you should consider the entirety of the instructions that I

12   have given.

13           But you will recall yesterday I spoke about the role

14   of the Court and the duty to follow the Court's instructions of

15   the law and your role as the sole and exclusive judges of the

16   facts, and conduct of counsel, that counsel have an obligation

17   to object, and you should draw no inference from that.  You

18   recall I gave you instructions on that yesterday, and also on a

19   trial free from sympathy or bias, because all parties to the

20   case are entitled to a trial free from passion and prejudice.

21   No one's view on the degree to which cocaine is harmful to

22   users and others is relevant to any issue in this case and must

23   not enter into your consideration of whether the government has

24   proven defendant's guilt as to any charge.  So I give you that

25   additional instruction now.

1          I told you how all parties are equal in the eyes of

2     the law.  I explained to you the burden of proof and what

3     reasonable doubt means.  We talked about what is and is not

4     evidence.  I talked about direct and circumstantial evidence.

5     Direct evidence is what a witness perceives, sees, hears, and

6     circumstantial evidence are reasonable inferences that may be

7     drawn from other facts, in that your verdict may be based on

8     circumstantial evidence or direct evidence, must be based on

9     the totality of the credible evidence.

10         I spoke to you about witness credibility, about what

11    to do and how to handle a prior inconsistent statement, bias of

12    witnesses, law enforcement witnesses, statements of the

13    defendant to law enforcement, what redaction means, Spanish

14    language testimony and how to deal with that, what a

15    stipulation is, how to evaluate cooperator witness testimony,

16    use of evidence obtained pursuant to a search, use of

17    recordings, particular investigative techniques not required,

18    preparation of witnesses, that's it's proper to meet with a

19    witness before they testify, how to evaluate expert testimony,

20    charts and summaries, the fact that you're not to consider that

21    persons that may have been mentioned during the trial are not

22    on trial here, you're not to speculate on that, the fact that

23    uncalled witnesses were equally available or unavailable to

24    both sides, the defendant's right not to testify, that you must

25    ignore any outside sources of information.

1          So picking up on that point, and resuming with the

2     instructions that I give you today:

3          In your deliberations and in reaching your verdict,

4     you must consider each count separately and determine whether

5     the government has carried its burden of proof with respect to

6     that charge.  I will provide you with a verdict form and you

7     will need to report the results of your deliberations on each

8     count on the verdict form.

9          The indictment contains four counts.  Each count

10    constitutes a separate offense or crime.  You must consider

11    each count of the indictment separately and you must return a

12    separate, unanimous verdict, as to each count separately.

13    There is no significance to the order of the numbered counts or

14    the specific number of counts charged.

15         You may only find the defendant guilty of a particular

16    count if the government has proven each element of the offense

17    charged with respect to that count beyond a reasonable doubt.

18    Your verdict as to one count should not control your decision

19    as to any other count.

20         Now let me turn to the substantive law that governs

21    this case.  The defendant, Juan Antonio Hernandez Alvarado, has

22    been formally charged in what is called an indictment.  An

23    indictment is simply an accusation, it's not evidence, it's no

24    more than the means by which a criminal case is started.  It's

25    not proof of defendant's guilt, it creates no presumption, and

it permits no inference that a defendant is guilty.  You are to give no weight to the fact that an indictment has been returned against the defendant.

I will give you a copy of the indictment to have in the jury room.  We'll make additional copies so you can pass it around, but I will summarize the four counts or charges.

Count One charges the defendant with conspiring to violate the narcotics laws of the United States by entering into an agreement to engage in one or more of the following three types of conduct:  Importing cocaine into the United States, that's 1; 2, manufacturing or distributing cocaine knowing or intending that it would be imported into the United States; and the 3rd type of conduct is possessing cocaine with the intent to distribute or manufacturing or distributing cocaine on board an aircraft registered in the United States.

That's what Count One charges.  I will go through the elements of Count One, but this is sort of an overview.

Count Two charges the defendant with using or carrying machine guns or destructive devices, or aiding and abetting the use or carrying of machine guns or destructive devices during and in relation to the crime charged in Count One of the indictment.

Count Three charges the defendant with conspiring to use and carry machine guns or destructive devices in connection with, and to possess machine guns or destructive devices, in

1  furtherance of the crime charged in Count One of the

2  indictment.

3          Count Four charges the defendant with making false

4  statements to federal law enforcement officers during an

5  interview on or about October 25, 2016.

6          That's the summary of the four charges.  Mr. Hernandez

7  has pleaded not guilty to all of the charges and is presumed

8  innocent of all of the charges.  You must consider each charge

9  separately and determine whether the government has carried its

10  burden of proof with respect to that charge.  In order for you

11  to convict the defendant of a charge, it is necessary for you

12  to find that the government has proven each and every element

13  of that specific charge beyond a reasonable doubt.

14          Now I'm going to tell you what the elements of the

15  offense are.  That's what I'm going to do this morning.

16          So Count One, to sustain its burden of proof with

17  respect to the charge of conspiracy contained in Count One of

18  the indictment, the government must prove beyond a reasonable

19  doubt the following two elements:

20          First, that the conspiracy charged in Count One

21  existed, in other words, from at least in or about 2004 up to

22  and including in or about 2016 there was an agreement or

23  understanding between two or more persons to engage in one or

24  more of the following types of conduct:  1, import a controlled

25  substance in the United States; 2, manufacture and distribute a

controlled substance, knowing or intending that controlled

substance would be imported into the United States; or 3,

possessing a controlled substance with intent to distribute and

manufacture and distribute a controlled substance on board an

aircraft registered in the United States.

So that's the first element, that such a conspiracy

existed.  And then the second element is that the defendant

knowingly and intentionally associated himself with and joined

in that conspiracy.

So what is a conspiracy?  A conspiracy is an agreement

or understanding between two or more people to accomplish by

joint action a criminal or unlawful purpose.  The essence of

conspiracy is an unlawful agreement to violate the law.  The

success or failure of a conspiracy is not material to the

question of guilt or lack of guilt of the conspirator, for a

conspiracy is a crime entirely separate and distinct from the

substantive crime that may be the goal of the conspiracy.  The

crime of conspiracy is complete once the defendant enters into

the unlawful agreement.

To establish the existence of a conspiracy, the

government is not required to show about that two or more

persons sat around a table and entered into a solemn pact,

orally or in writing, stating that they have formed a

conspiracy to violate the law and setting forth details of the

plans and the means by which the unlawful project is to be

carried out or the part to be played by each conspirator.

Indeed, it would be extraordinary if there were such a formal

document or specific agreement.  The adage "actions speak

louder than words" applies here.

When people undertake to enter into a criminal

conspiracy, much is left to unexpressed understanding.

Conspirators do not usually reduce their agreements to writing,

nor do they publicly broadcast their plans.  Express language

or specific words are not required to indicate assent or

attachment to a conspiracy or agreement to join a conspiracy.

From its very nature, a conspiracy is almost invariably

characterized by secrecy, which makes detection difficult.

You need only find that the defendant entered into the

unlawful agreement alleged in the indictment with one or more

other persons in order to find that that a conspiracy existed.

If, upon consideration of all the evidence, direct and

circumstantial, you find beyond a reasonable doubt that two or

more persons had a meeting of the minds, that is, that they

agreed to work together in furtherance of the unlawful scheme,

then proof of the existence of the conspiracy is established.

In order for the government to prove a conspiracy, it

must prove that the conspiracy existed between at least two

individuals who were not acting at the direction of the

government at the time of the conspiracy.  In this case, one of

the government's witnesses, Leonel Devis Rivera Maradiaga, who

testified that he was involved with the Cachiros, if you
remember, was acting at the direction of the government
beginning in November 2013.  As a result, Rivera Maradiaga may
not be considered by you in determining whether the government
has proven beyond a reasonable doubt that an agreement or
understanding was reached between two or more individuals to
accomplish the object of the conspiracy from the time Rivera
Maradiaga began acting at the direction of the government in
November 2013.

         However, Rivera Maradiaga may be considered by you in
determining whether such an agreement existed before he started
acting at the direction of the government.  In other words, the
relevant question is whether the government has proved beyond a
reasonable doubt that the criminal agreement charged in Count
One was reached between the defendant or other individuals who
were not working at the direction of the government at the
time.

         Now the object of the conspiracy -- remember, I
mentioned three objects.  The object of the conspiracy is the
illegal goal that the co-conspirators agree or hope to achieve.

         I will once again mention the three objects of the
conspiracy in Count One:  The importation of a controlled
substance from a place outside of United States into the United
States; 2, the manufacture or distribution of a controlled
substance, with the knowledge or intent that some of the

controlled substance would be unlawfully imported into the

United States; or 3, the possession of a controlled substance

with intent to distribute, or the manufacturing or distribution

of a controlled substance, on board an aircraft registered in

the United States.

So the government does not have to prove all three

objects charged.  Rather, proof beyond a reasonable doubt of an

agreement to accomplish any one of the three objects of the

alleged conspiracy is sufficient.  You must be unanimous as to

which object you find the defendant guilty of participating in

the conspiracy with that as its object.  That is, you must all

be in agreement with respect to at least one of the alleged

objects of the conspiracy charged in Count One.

With respect to the second object, the distribution or

manufacture of a controlled substance with the intent or

knowledge that some of the controlled substance would be

imported into the United States, it's not necessary for the

government to prove that the conspiracy had as its object both

the distribution and the manufacture of a controlled substance.

It is sufficient if you find that the conspiracy was aimed at

either the manufacture or the distribution of a controlled

substance with the intent or knowledge that some of it would

later be imported into the United States.  Here, too, you must

be unanimous as to which of these objectives, manufacture or

distribution or both, the conspiracy had.

1          With respect to the third object, the manufacture or

2     distribution or possession with intent to distribute a

3     controlled substance on board an aircraft registered in the

4     United States, it is not necessary for the government to prove

5     that the conspiracy had as its object the manufacture and the

6     distribution of a controlled substance as well as the

7     possession of a controlled substance with intent to distribute.

8     It is sufficient if you find that the conspiracy was aimed at

9     any one of those objectives on board an aircraft registered in

10    the United States.  Here, too, you must be unanimous as to

11    which of these objects, manufacture, distribution, or

12    possession with intent to distribution or all three, the

13    conspiracy had.

14         I instruct you that cocaine is a controlled substance,

15    but the purity of the narcotics involved is not an element of

16    the crime charged.  So you need not be concerned with the

17    purity of the cocaine.  I also instruct you that the defendant

18    need not know the exact nature of the drug.  Also, in

19    considering whether a conspiracy existed, you need not consider

20    whether the government has proven that a particular quantity of

21    a controlled substance was involved in the charged conspiracy.

22         Now let me define the terms "import," "distribute,"

23    "manufacture," "possession with intent to distribute," and the

24    phrase "on board an aircraft registered in the United States,"

25    as they apply to the objects charged in Count One.

1          The term "import" has its common, everyday meaning,

2     namely to bring or introduce something into an area of the

3     United States.  To import a substance means to bring or

4     transport a substance into the United States from someplace

5     outside the United States.

6          It's not necessary for you to find that the defendant

7     or any co-conspirator actually carried or agreed to actually

8     carry a controlled substance into the United States.  Nor must

9     you conclude that others in the conspiracy ultimately succeeded

10    in actually bringing the controlled substance into the country.

11         The word "distribute" means the actual, constructive,

12    or attempted transfer of a controlled substance.  To distribute

13    simply means to deliver, to pass on, to hand over something to

14    another person, or to cause it to be delivered, passed on or

15    handed over to another person.  Distribution does not require a

16    sale, but it includes sales.

17         To manufacture a controlled substance simply means to

18    produce, prepare, or process it, or to engage or participate in

19    a process that results in the production of the controlled

20    substance.

21         Again, with respect to Count One, since the defendant

22    is charged with conspiring to manufacture or distribute a

23    controlled substance, it is not necessary for you to find that

24    the defendant actually manufactured or distributed a controlled

25    substance.  Nor must you conclude that others in the conspiracy

actually manufactured or distributed anything.  You need only

find that the defendant and others knowingly agreed to

manufacture or distribute a controlled substance.

The word "distribution" means the process of actual,

constructive, or attempted transfer of a controlled substance,

including a sale.  Distribution does not require a sale, but it

includes sales.

The legal concept of "possession" may differ from the

everyday usage of that term.  Actual possession is what most of

us think of as possession, that is, having physical custody of

an object as possess this pen.  However, a person need not have

actual, physical possession, that is, physical custody of an

object, in order to be in legal possession of it.  If a person

has the ability to exercise substantial control over an object,

even if he or she does not have the object in his physical

custody, and that person has the intent to exercise such

control, then the person is in possession of that object.  This

is called "constructive possession."

Control over an object may be demonstrated by the

existence of a working relationship between one person having

the power or ability to control the item and another person who

has actual physical custody.  The person having control

possessed the narcotics because he or she has an effective

working relationship with the person who has actual physical

custody of the narcotics and because he or she can direct the

JAHTHER1                      Charge

1   movement or transfer or disposition of the narcotics.  In

2   addition, an individual may have possession of an item that is

3   not found on that person because that individual has a

4   relationship to the location where the item is maintained.  In

5   this manner, for example, a business person may possess things

6   that are scattered through a number of stores or offices or

7   installations around the country.

8           More than one person can have control over the same

9   narcotics.  The law recognizes that possession may be sole or

10  joint.  If one person alone has actual or constructive

11  possession of a thing, possession is sole.  If more than one

12  person has possession of it, as I have defined possession for

13  you, then possession is joint.  That is what is meant by

14  "possession."

15          Finally, possession and ownership are not the same.  A

16  person can possess an object and not be the owner of the

17  object.

18          Let me give you some examples of possession.  I have

19  told you about having the pen in my hand.  That's possession.

20  But let's say I brought some candy in today and left it on

21  Flo's desk.  Flo knows that she can't all of the candy, she

22  better leave some for me.  I do not physically possess the

23  candy, but I do have control over it.  Flo also has control

24  over it.  I can be said to possess the candy jointly with Flo.

25          One more example:  Say my grandmother left some

objects for me, some coins, when she died and they're now

sitting in a safe deposit box at the bank.  My brothers and

sisters and I know that we are the only people who can get into

that box.  Do we have possession of the coins?  Absolutely we

have possession of them, even though they're in a safe deposit

box inside a bank and not in our hands or even in our homes.

If you find that a person knowingly possessed a

controlled substance, then you must decide whether the person

intended to distribute it.  Possession with intent to

distribute simply means the possession of a controlled

substance with the intention or purpose to distribute it to

another person or persons.  As I explained, to "distribute"

means simply to transfer to another.

Often it is possible to determine whether someone had

an intent to distribute from the quantity of drugs that were

possessed, although the possession of a large quantity of

narcotics does not necessarily mean that an individual intended

to distribute them.  On the other hand, an individual may have

intended to distribute a controlled substance even if he did

not possess a large quantity of it.

The government need prove only one object of the

conspiracy.  The government need not prove all three.  You must

be unanimous, however, as to which act, if any, was proven

beyond a reasonable doubt to have been the object of the

conspiracy.

1           I also instruct you that the defendant need not know

2     that the narcotics would be or were possessed on board an

3     aircraft that was registered in the United States.  If the

4     government proves that an aircraft used or intended to be used

5     in the conspiracy was registered in the United States, that is

6     enough on the registration point.

7           If you conclude that the government has proven the

8     existence of the conspiracy charged in Count One, then you must

9     next determine whether the defendant participated in the

10    conspiracy with knowledge of its unlawful purpose, and in

11    furtherance of its unlawful objective or objectives.

12          The government must prove beyond a reasonable doubt

13    that the defendant knowingly and intentionally entered into the

14    conspiracy charged in Count One with criminal intent, that is,

15    with a purpose to violate the law, and that the defendant

16    agreed to take part of the conspiracy to promote and cooperate

17    in its unlawful objective or objectives.

18          An act is done knowingly and intentionally if it is

19    done deliberately and purposely.  That is, a defendant's acts

20    must have been the product of the conscious objective of the

21    defendant, rather than a product of mistake or accident or mere

22    negligence or some other reason.  The fact that the acts of a

23    defendant without knowledge merely happen to further the

24    purposes and the objectives of the conspiracy does not make the

25    defendant a member.

1            You recall the day we first met I made reference to

2      the fact that science has not yet devised a manner of looking

3      into another person's mind and knowing what that person is

4      thinking.  Do you remember I said I hope we never invent such a

5      machine.  However, you do have before you evidence of certain

6      acts, conduct, and conversations.  The government contends that

7      the defendant's acts, conduct, and conversations show beyond a

8      reasonable doubt the defendant's knowledge of the unlawful

9      purpose of the conspiracy.  By pleading not guilty, the

10     defendant denies that he committed the charged offense.  It is

11     for you to determine whether the government has proven beyond a

12     reasonable doubt the defendant's knowledge and intent.

13            It is not necessary for the defendant to have been the

14     owner or responsible for the controlled substance that was

15     intended to cross the United States border.  Other individuals

16     or organizations may be the owners of or responsible for the

17     narcotics intended to cross the border, but the defendant may

18     nonetheless be guilty of conspiring to distribute or

19     manufacture the narcotics with the knowledge or intent that

20     they be imported, if the government proves the elements of

21     Count One as I am explaining them to you.

22            It is not necessary for the government to show that

23     the defendant was fully aware of every detail of that

24     conspiracy or that the defendant knew every other member of the

25     conspiracy.  A defendant may know only one other member of the

conspiracy and still be a co-conspirator.  It is not necessary
for a defendant to receive any monetary benefit from his
participation in the conspiracy or to have a financial stake in
the outcome.  It is enough if he participated in the conspiracy
intentionally and knowingly.

The duration and extent of a defendant's participation
in the conspiracy charged in Count One has no bearing on the
defendant's guilt or lack of guilt.  A defendant need not have
joined the conspiracy at the outset.  He may have joined it at
any time in its progress, and he will still be held responsible
for all that was done before he joined and all that was done
during the conspiracy's existence while he was a member.  Each
member of a conspiracy may perform separate and distinct roles
and separate and distinct acts.  Some conspirators play major
roles while others play minor roles.  An equal role is not what
the law requires.  Even a single act may be sufficient to draw
a defendant within the scope of the conspiracy.

However, a person's mere presence at the scene of a
crime does not, by itself, make him a member of the conspiracy.
Similarly, a person's mere association with a member of a
conspiracy does not make that person a member of the
conspiracy, even when that association is coupled with
knowledge that a conspiracy exists.  What is necessary is that
a defendant participated in the conspiracy with knowledge of
its unlawful purpose and with an intent to aid in the

1   accomplishment of its unlawful objective or objectives.

2           A conspiracy, once formed, is presumed to continue

3   until either its objective is accomplished or there is some

4   affirmative act of termination by its members.  So, too, once a

5   person is found to be a member of a conspiracy, he is presumed

6   to continue his membership in the venture until its

7   termination, unless it is shown by some affirmative proof that

8   he withdrew and disassociated himself from it.

9           The conspiracy charged in Count One is alleged to have

10  existed from in or about 2004 up to and including in or about

11  2016.  It is not essential that the government prove that the

12  conspiracy started and ended on any specific date.  Indeed, it

13  is sufficient if you find that the conspiracy was formed and

14  that it existed for some time around the dates I just

15  mentioned.

16          When people enter into a conspiracy to accomplish an

17  unlawful end, they become agents or partners of one another in

18  carrying out the conspiracy.  Accordingly, the reasonably

19  foreseeable acts or statements of any member of the conspiracy

20  of the common purpose of the conspiracy are deemed under the

21  law to be the acts or statements of all members of the

22  conspiracy, and all of the members of the conspiracy are

23  responsible for such acts or statements made during and in

24  furtherance of the conspiracy.  This rule applies even though

25  such acts or statements were not made or committed in the

1    defendant's presence or were made or committed without his

2    knowledge.

3            Now if and only if you find the government has proved

4    beyond a reasonable doubt the defendant is guilty of

5    participating in the conspiracy charged in Count One, then you

6    must determine the type of controlled substance involved in the

7    conspiracy and its weight.  You will be provided with a verdict

8    form that will include spaces to respond to this inquiry.

9            The government has alleged that cocaine was the

10   controlled substance involved in the conspiracy charged in

11   Count One.  I instruct you as a matter of law that cocaine is a

12   controlled substance as I previously defined for you.  The

13   government need not prove the purity of the cocaine.  Any

14   mixtures or substance containing a detectable amount of cocaine

15   is sufficient.

16           Now as to drug quantity, you need not determine the

17   precise quantity of cocaine.  Instead, if you reach the

18   question of quantity, indicate on the verdict form whether the

19   government has proven beyond a reasonable doubt that the

20   conspiracy involved five kilograms or more of mixtures or

21   substances containing a detectable amount of cocaine.  Your

22   finding on quantity must be unanimous in that you must all

23   agree that the conspiracy involved at least the quantity you

24   indicate.  Only if you all agree that the conspiracy involved

25   five kilograms or more of cocaine should you mark that finding

JAHTHER1                          Charge

1    on the verdict form.

2              In making your determination about quantity, you

3    should include whatever quantity of cocaine was involved in any

4    act or acts in which the defendant personally and directly

5    participated.  If you find that the defendant personally or

6    directly participated in a jointly undertaken drug transaction,

7    he is responsible for the full quantity of the drugs involved

8    in that transaction.

9              In addition, in making your determination about

10   quantity, you should also include any other quantity of cocaine

11   involved so long as that quantity was either known to the

12   defendant or reasonably foreseeable to him, and within the

13   scope of the conspiracy.  Reasonably foreseeable means that the

14   defendant could have reasonably anticipated the type and

15   quantity of drugs in the conspiracy.

16             Ladies and gentlemen, we're going to stand up and

17   stretch.

18             (Pause)

19             THE COURT:  Count Two charges the defendant with using

20   or carrying machine guns or destructive devices in connection

21   with, as well as aiding and abetting the possession of machine

22   guns or destructive devices in connection with, the drug

23   trafficking crime charged in Count One of the indictment.

24             Specifically, Count Two charges that from at least in

25   or about 2004, up to and including in or about 2016, the

defendant, during and in relation to the narcotics importation

conspiracy charged in Count One, knowingly used and carried

firearms in furtherance of the conspiracy.  Count Two also

charges the defendant with aiding and abetting the use,

carrying, and possession of those firearms, specifically

including machine guns that were capable of automatically

shooting more than one shot without manually reloading by a

single function of the trigger, as well as destructive devices.

          In order to convict the defendant of Count Two, the

government must prove the following elements beyond a

reasonable doubt:

          First, that the defendant committed the drug-

trafficking crime charged in Count One of the indictment.

Therefore, if you conclude that the defendant's guilt has been

proven beyond a reasonable doubt as to Count One, then this

element has been satisfied.  If the government has not met its

burden as to Count One, this element has not been satisfied.

          Second, that the defendant knowingly used or carried a

firearm during and in relation to the drug-trafficking crime

charged in Count One, or possessed a firearm in furtherance of

that drug-trafficking crime charged in Count One, or aided and

abetted another in such use, carrying, or possession of a

firearm.

          I will define for you certain terms related to the

second element of Count Two.

1        "Use."  In order to prove that the defendant used

2   machine guns or destructive devices, the government must prove

3   beyond a reasonable doubt an active employment of a machine gun

4   or destructive device by the defendant during and in relation

5   to the commission of a drug-trafficking crime.

6        This does not mean that the defendant must actually

7   fire or attempt to fire a machine gun or destructive device,

8   although those would obviously constitute use of the machine

9   gun or destructive device.  Brandishing, displaying, or even

10  referring to the machine gun or destructive device so that

11  others present know that the defendant has the machine gun or

12  destructive device available, if needed, all constitute use of

13  a machine gun or destructive device.  The mere possession of a

14  machine gun or destructive device at or near the site of the

15  crime without active employment as I just described it to you

16  is not, however, sufficient to constitute use of a machine gun

17  or destructive device.

18       The term "carry."  In order to prove the defendant

19  carried a machine gun or destructive device, the government

20  must prove beyond a reasonable doubt that the defendant had a

21  machine gun or destructive device within his control so that it

22  was available in such a way that it furthered the commission of

23  the crime.  The defendant need not have held the machine gun or

24  destructive device physically, that is, have had actual

25  possession of its on his person.

1          If you find that the defendant had dominion and

2    control over the place that the machine gun or destructive

3    device was located, and had the power and intention to exercise

4    control over that machine gun or destructive device, and that

5    the machine gun or destructive device was immediately available

6    to him in such a way that it furthered the commission of the

7    drug trafficking crime charged in Count One, you may find that

8    the government has proven that the defendant carried the

9    machine gun or destructive device.

10          "Possess." I will define that term. I previously

11   defined the word "possess" in connection with Count One. Those

12   instructions apply equally here.

13          I will also add that possession of a machine gun or

14   destructive device in furtherance of a drug-trafficking crime

15   requires that the defendant possessed a machine gun or a

16   destructive device, and that the possession advanced or moved

17   forward the crime. So the possession must have advanced or

18   moved forward the crime. The mere presence of a machine gun or

19   destructive device is not enough. Possession in furtherance

20   requires that the possession be incident to an essential part

21   of the crime. The machine gun or destructive device must have

22   played some part in furthering the crime in order for this

23   element to be satisfied.

24          Finally, I advise you that the fact that a defendant

25   has a license to carry a firearm is not a defense to Count Two.

1           I will now instruct you on the concept of aiding and

2      abetting.  For Count Two, the defendant may be found guilty if

3      he aided and abetted a third party who committed the crime.

4      Aiding and abetting liability is its own theory of criminal

5      liability.

6           Under the relevant federal statute, the one way that a

7      defendant may be found guilty of aiding and abetting a crime is

8      if the defendant, while not himself committing the crime,

9      assisted another person or persons in committing the crime.

10     Specifically, under the federal aiding and abetting statute,

11     whoever "aids, abets, counsels, commands, induces or procures"

12     the commission of an offense is punishable as a principal.  A

13     person who aids and abets another to commit an offense is just

14     as guilty of that offense as if he had committed it himself.

15          Therefore, if you find that the government has proven

16     beyond a reasonable doubt that another person actually

17     committed a crime with which the defendant is charged, and that

18     the defendant aided and abetted that person in the commission

19     of the offense, then you may find the defendant guilty of that

20     crime.  Obviously, no one can be convicted of aiding and

21     abetting the criminal acts of another if no crime was committed

22     by the other person.  But if you do find that a crime was

23     committed, then you must consider whether the defendant aided

24     and abetted the commission of this crime.

25          Under this theory, in order to aid and abet another to

commit a crime, it is necessary that the defendant willfully

and knowingly associated himself in some way with the crime,

and that he willfully and knowingly sought by some act to help

make the crime succeed.  Participation in a crime is willful if

action is taken voluntarily and intentionally or, in the case

of a failure to act, with the specific intent to fail to do

something the law requires to be done, that is to say, with a

bad purpose either to disobey or to disregard the law.

The mere presence of the defendant where a crime is

being committed, even when coupled with knowledge by the

defendant that a crime is being committed, is not sufficient to

make the defendant guilty as an aider and abettor.  Such a

defendant would only be guilty of the offense as an aider and

abettor if, in addition to knowing of the criminal activity, he

actually took some action intending to help the crime succeed.

In considering this theory of liability, ask yourself

these questions:

Did the defendant participate in the crime charged as

something he wished to bring about?

Did he associate himself with the criminal venture

knowingly and willfully?

Did he seek by his actions to make the criminal

venture succeed?

If he did these things, then the defendant is an aider

and abettor, and therefore, guilty of the offense.

1              Under the statute, another way a defendant may be

2      found guilty of aiding and abetting the criminal acts of

3      another is if the defendant intentionally caused another person

4      to physically commit the crime.  Specifically, the statute

5      provides that whoever "willfully causes an act to be done,

6      which if directly performed by him or another," would be an

7      offense, is punishable as a principal.

8              Thus, as to Count Two, if the defendant intentionally

9      caused another to possess a machine gun or destructive device

10     during and in relation to and in furtherance of the

11     drug-trafficking crime charged in Count One, then the defendant

12     is guilty of the crime charged in Count Two just as if he had

13     physically committed the crime himself.

14             Finally, you may also find the defendant guilty of

15     aiding and abetting the crime charged in Count Two if you find

16     that he actively participated in the drug-trafficking crime

17     charged in Count One with advance knowledge that another

18     participant in the crime would use or carry a machine gun or

19     destructive device during and in relation to, or possess a

20     machine gun or destructive device in furtherance of, that

21     crime.  Advance knowledge means knowledge at a time the

22     defendant can attempt to alter the plan or withdraw from it.

23     Knowledge of the machine gun or destructive device may, but

24     does not have to, exist before the underlying crime is begun.

25     It is sufficient if the knowledge is gained in the middle of

1    the underlying crime, so long as the defendant continues to

2    participate in the crime and has a realistic opportunity to

3    withdraw from it.  You may, but need not, infer that the

4    defendant has sufficient advanced knowledge if you find the

5    defendant continued his participation in the crime after

6    learning about the use, carrying, or possession of a machine

7    gun or a destructive device by another person who was engaged

8    in working with him.

9         If, and only if, you find that the government has

10   proved beyond a reasonable doubt that the defendant is guilty

11   of committing or aiding and abetting the commission of the

12   firearms offense charged in Count Two, you must then determine

13   whether the offense involved was a "machine gun" or a

14   "destructive device."  The verdict form will include spaces for

15   you to indicate your determinations as to firearm type on Count

16   Two.

17        A machine gun in this context is any weapon which

18   shoots, is designed to shoot, or can be readily restored to

19   shoot automatically more than one shot without manual reloading

20   by a single function of the trigger.

21        (Continued on next page)

22

23

24

25

JAH9HER2                    Charge

1              THE COURT:  (Continuing)  The term "destructive

2     device" includes any explosive, bomb, or grenade and any type

3     of weapon other than a shotgun or a shotgun shell that will

4     expel a projectile by the action of an explosive or other

5     propellant and that has any barrel with a bore of more than

6     one-half inch in diameter.  A bore is the hollow interior of a

7     barrel of a gun.

8              Count Three.  Count Three is also a conspiracy charge.

9     It charges from at least in or about 2004 up to and including

10    in or about 2016 the defendant agreed with others to use and

11    carry a firearm during and in relation to the drug-trafficking

12    crime charged in Count One of the indictment or to possess a

13    firearm in furtherance of the drug-trafficking crime charged in

14    Count One.

15             Specifically, Count Three charges that from at least

16    in or about 2004 up to and including in or about 2016 the

17    defendant and others intentionally and knowingly combined,

18    conspired, confederated, and agreed together and with each

19    other to violate the federal laws prohibiting use or carrying

20    firearms in furtherance of the narcotics importation conspiracy

21    charged in Count One.  The object of the conspiracy charged in

22    Count Three is the knowing use and carrying of firearms and the

23    knowing possession of firearms in furtherance of the narcotics

24    importation conspiracy charged in Count One, including

25    machineguns that were capable of automatically shooting more

JAH9HER2                        Charge

than one shot without manual reloading by a single function of
the trigger, as well as destructive devices.

        To sustain its burden of proof with respect to the
conspiracy charged in Count Three of the indictment the
government must prove beyond a reasonable doubt the following
two elements:

        First, that the conspiracy charged in Count Three
existed.  In other words, that from at least in or about 2004
up to and including in or about 2016 there was an agreement or
understanding between two or more persons to engage in one or
more of the following types of conduct, one, to use or carry a
firearm during and in relation to the drug-trafficking crime
charged in Count One of the indictment or, two, to possess a
firearm in furtherance of the crime charged in Count One.

        Second, the defendant must knowingly and intentionally
associate himself with, and join in, the conspiracy.

        I have already provided you with instructions on what
it means to use or carry a machinegun or destructive device in
relation to a drug-trafficking crime or possess a machinegun or
destructive device in furtherance of that crime.  I have
already instructed you on the law of conspiracy, and you should
apply those instructions with respect to Count Three.  All of
those instructions apply equally here.

        Now, Count Three has a special question, a special
interrogatory on the verdict sheet.

1        If, and only if, you find that the government has

2   proved beyond a reasonable doubt that the defendant is guilty

3   of committing the fires offense charged in Count Three, you

4   must then determine whether the offense involved a "machinegun"

5   or "destructive device."

6        I instructed you on the meaning of the terms

7   machinegun and destructive device in connection with Count Two,

8   and those instructions apply equally for the special

9   interrogatory or special additional question on Count Three.

10       The verdict form will include spaces for you to

11  indicate your determinations as to firearm type on Count Three.

12       Let's stand up and stretch.

13       Maybe I should have appointed one of the jurors as the

14  calisthenics instructor.

15       JURY:  She's there.

16       THE COURT:  It's good for all of us to take deep

17  breaths, right, and stretch the limbs.  OK.

18       Count Four charges the defendant with making false

19  statements to federal law enforcement officers during an

20  interview on or about October 25, 2016.  The indictment

21  specifies two different, allegedly false statements by the

22  defendant in that interview.

23       Specifically Count Four charges that on or about

24  October 25, 2016 the defendant knowingly and willfully

25  falsified, concealed, and covered up by a trick, scheme and

device a material fact and made materially false, fictitious, and fraudulent statements and representations to representatives of the United States Drug Enforcement Administration, the DEA, in connection with an investigation being conducted here in the Southern District of New York. Count Four charges the defendant with making misrepresentations in connection with the conduct charged in Counts One, Two, and Three, including stating that he never accepted money from drug traffickers for any purpose and never provided assistance to drug traffickers in any way.

The government has alleged that the defendant made two false statements: First, that the defendant never accepted money from drug traffickers for any purpose and, second, that the defendant never provided assistance to drug traffickers in any way.

It is not necessary that the government prove both statements constituted material false statements. However, you may not find the defendant guilty on Count Four unless all of you agree unanimously as to which of the specified statements constitute a materially false statement -- as I am about to define the terms -- or that they both did. In other words, to find the defendant guilty on Count Four, all of you must agree that the same statement was materially false.

To sustain the burden of proof with respect to the charge of false statements contained in Count Four of the

indictment, the government must prove beyond a reasonable doubt the following elements:

First, that on or about the date set forth in the indictment, October 25, 2016, the defendant made a statement or representation.

Second, that the statement or representation was material.

Now, what does material mean?  A fact is material if it is capable of influencing the government's decisions or activities.  While the government must prove that one or both of the alleged false statements for Count Four was capable of influencing a decision or activity, the government is not required to prove that anyone actually relied on the allegedly false statement.  In other words, the government is not required to prove that anyone made a decision or took any action based upon the false statement alleged.

The third element is that the statement or representation was false, fictitious or fraudulent.

A statement or representation is false or fictitious if it was untrue when made, and known at the time to be untrue by the person making it or causing it to be made.  A statement or representation is fraudulent if it was untrue when made, and was made with the intent to deceive the government agency to which it was submitted.

The fourth element on Count Four is that the false,

JAH9HER2                        Charge

fictitious or fraudulent statement was made knowingly and
willfully.

          An act is done knowingly if it is done purposely and
voluntarily, as opposed to mistakenly or accidentally.  An act
is done willfully if it is done with an intention to do
something the law forbids, or with a bad purpose to disobey the
law or with the specific intent to fail to do something the law
requires to be done.

          The fifth and final element is that the statement was
made with respect to a matter within the jurisdiction of the
government of the United States.

          For a statement to fall within the jurisdiction of the
government of the United States, it must concern an authorized
function of a department or agency of the United States
government.  I instruct you that the DEA or Drug Enforcement
Administration is an agency of the United States government.

          And, of course, the statement must have been made to a
person acting on behalf of an agency of the United States
government.

          I further instruct you that it is not necessary for
the government to prove that the defendant had actual knowledge
that the false statement or representation was to be utilized
in a matter that was within the jurisdiction of the government
of the United States.  In other words, it is sufficient to
satisfy this element if you find that the statement or

JAH9HER2                          Charge

representation was made with regard to a matter within the

jurisdiction of the government of the United States, regardless

of the defendant's knowledge of that fact.

          Congress has determined -- and this is going to relate

to certain of the crimes charged in the indictment,

specifically Counts One through Three of the indictment --

Congress has determined that certain acts begun or committed

outside the territorial jurisdiction of the United States are

chargeable under U.S. law.  This applies to Counts One through

Three of the indictment.  Here, the parties have agreed by

stipulation that venue is proper in the Southern District of

New York as to all counts in the indictment:  Counts One, Two,

Three, and Four.

          Variance in dates.

          You will note that the indictment alleges that certain

acts occurred on or about various dates.  It does not matter if

the evidence you heard at trial indicates that a particular act

occurred on a different date.  The law requires only a

substantial similarity between the dates alleged in the

indictment and the dates established by the evidence.

          That concludes the four charges.

          Now, in your deliberations, in your thinking about

this case, the possible punishment of a defendant in the event

of a conviction is not a proper consideration for the jury and

should not, in any way, enter into or influence your

1    deliberations.  The duty of imposing sentence belongs to the

2    court, to the judge, and the judge alone.  Your function is to

3    weigh the evidence and determine whether the defendant is or is

4    not guilty based on the evidence and the law.

5           So I instruct you possible punishment may not be

6    considered in your deliberations.

7           Now I'm going to have the attorneys assemble the

8    documentary evidence in this case so that it can go into the

9    jury room and you'll have it in there.

10          With regard to the physical exhibits, if you want to

11   see any of them, send out a note and we'll bring you into the

12   courtroom and you can examine the physical evidence.

13          If you want any of the testimony read, please send out

14   a note specifying what you want to hear, and we will bring

15   you -- we will get that to you one way or another.

16          Please be as specific as possible in requesting any

17   portions of the testimony.  If you want any further explanation

18   of the law as I've explained it to you, you may request that.

19   Your request for testimony, in fact, any communication with the

20   Court should be made in writing, signed by your foreperson and

21   given to the deputy marshal outside the jury room who will give

22   it to me.  In any event, do not tell me or anyone how the jury

23   stands on any issue, in other words, what the vote is.  Don't

24   tell anyone what the vote is until after a unanimous verdict is

25   reached.

1      Some of you have taken notes periodically throughout

2  this trial.  Notes that any of you may have made may not be

3  given any greater weight or influence in the determination of

4  the case than the recollections or impressions of other jurors,

5  whether from notes or memory with respect to the evidence

6  presented or what conclusions, if any, should be drawn from

7  such evidence.  Any difference between a juror's recollection

8  and another juror's notes should be settled by asking to have

9  the court reporter read back the transcript, for it is the

10  court record rather than any juror's notes upon which the jury

11  must base its determination of the facts and its verdict.

12      Now, in the course of deliberations when you're in the

13  jury room to decide this case, it is your duty as jurors to

14  consult with one another and to deliberate with a view to

15  reaching an agreement.  Each of you must decide the case for

16  himself or herself but you should do so only after

17  consideration of the case with your fellow jurors and you

18  should not hesitate to change an opinion when convinced that it

19  is erroneous.

20      Your verdict must be unanimous but you're not bound to

21  surrender your conscientiously held beliefs concerning the

22  effect or weight of the evidence for the mere purpose of

23  returning a verdict solely because of the opinion of other

24  jurors.  Discuss and weigh your respective opinions

25  dispassionately, without regard to sympathy, without regard to

JAH9HER2                    Charge

prejudice or favor for either party and adopt the conclusion
that in your good conscience appears to be in accordance with
the evidence and the Court's instruction on the law.

Please remember, you are not partisans.  You are
judges -- judges of the facts -- not representatives of a
constituency or a cause.

If at any point you find yourselves divided, as I said
before do not inform the Court of what the vote split is.  Once
you have reached a verdict, do not announce what the verdict is
until I ask you to do so in this courtroom.

Once you go into the jury room, you must select a
foreperson who will be responsible for signing all
communications to the court on behalf of the jury and for
handing them to the deputy marshal during your deliberations.
This should not be understood to mean that an individual cannot
send the court a note should the foreperson refuse to do so.

After you have reached a verdict, your foreperson will
advise the deputy marshal outside the door that you have
reached a verdict.  The foreperson fills out one copy of the
verdict sheet, signs it as foreperson and puts the date on it,
and puts it in the envelope and hands it to the deputy marshal
indicating that the envelope contains the verdict.

I will stress that each of you must be in agreement
with the verdict that is announced in court.  Once your verdict
is announced by your foreperson in open court and officially

JAH9HER2                     Charge

1    recorded it cannot ordinarily be revoked.

2          Your function now is to weigh the evidence in this

3    case and to determine whether the government has or has not

4    proven beyond a reasonable doubt the guilt of Juan Antonio

5    Hernandez Alvarado with respect to each of the four counts in

6    the indictment.

7          You must base your verdict solely on the evidence or

8    lack of evidence in the case and these instructions as to the

9    law.  I am sure that if you listen to the views of your fellow

10   jurors and if you apply your own common sense you will reach a

11   verdict in accordance with the evidence and the law.

12         Finally, let me state that your oath, the oath you

13   took in this courtroom at the beginning of the trial, sums up

14   your duty and that is:  Without fear or favor to anyone you

15   will well and truly try the issues, based solely upon the

16   evidence or lack of evidence and the Court's instructions as to

17   the law.

18         Members of the Jury, that concludes my instructions.

19   You may stand and stretch for a moment while I see the lawyers

20   at the sidebar.  Thank you.

21         (At sidebar)

22         THE COURT:  Anything from the government?

23         MR. BOVE:  No.  Judge.  Thank you.

24         THE COURT:  Anything from the defendant?

25         MR. MALONE:  No, sir.

JAH9HER2                    Charge

1            THE COURT:  OK.  So what I'm going to do, I think I've

2       told you this already, I'm going to tell our alternates that

3       they're still on jury duty.  They may not discuss the case with

4       anyone.  They may not read anything about it.  They are subject

5       to being recalled but they should go back to their ordinary

6       daily lives and we'll let them know once they are dismissed.

7            MR. BOVE:  Thank you.

8            MR. MALONE:  Thank you, Judge.

9            (In open court)

10           THE COURT:  Juror no. 15, if you'll raise your hand.

11      Juror no. 16, if you'll raise your hand.  Juror no. 17, if

12      you'll raise your hand.  Juror no. 18, if you'll raise your

13      hand -- sir, what is your juror number?  What's your juror

14      number?

15           JUROR:  Fifteen.

16           JUROR:  We lost someone, so 18.

17           THE COURT:  You're jury no. 15.  Ma'am, you're juror

18      no. 16.  Sir, you're juror 17.  And ma'am, you're juror no. 18.

19      Correct.  All right.

20           So let me tell you what happens now.  You're still on

21      jury duty and the reason for that is it has been known to

22      happen that alternate jurors need to be recalled and sit as

23      regular jurors during the deliberations.  We hope that doesn't

24      happen but we cannot exclude it.  You can go back to your daily

25      lives, to work or whatever your responsibilities are.  But you

are subject to recall.  I give you my word, and Flo joins me in

that, that we will call you when, as, and if the jury is

discharged in this case at the end of the case and we'll let

you know that you now are free to discuss the case with anyone.

All right.  So until you get that call you're still on jury

duty.

          Juror 13, where are you?  Hi.  So everything I just

said about you still being on jury duty and subject to recall

and that you may not discuss the case applies to you as well.

You're subject to recall but you may go about and resume your

daily activities.  All right.  And when I say that to each of

you, it means that you may not do any reading or research about

the case.

          Words are inadequate to say how important your jury

service is to all parties in a case, to our system of justice

in this country.  And you leave this courtroom with the

admiration and respect of the Court.

          So at this time we're all going to stand as our

alternate jurors leave and you can collect your belongings and

then you should leave the jury room if you will, please.

          (Alternate jurors excused)

          Just to let you know, you may deliberate during the

hours that you choose in the sense that I will call you back at

the end of the day today if you have not reached a verdict,

I'll call you back and I will give you instructions but

JAH9HER2                    Charge

basically you do not discuss the case unless all twelve of you

are in the room.  That's the only time you may discuss it.  And

your lunch, of course, is being brought in to you today.

          So, ladies and gentlemen, you now may discuss the case

among yourselves.  Thank you.

          Before you leave -- one second.  If the marshal will

step forward.

          Please be seated, everyone.  My apologies.

          (Marshal sworn)

          (At 11:27 a.m., the jury retired to deliberate)

          THE COURT:  A few housekeeping matters.  First of all,

you're going to assemble the exhibits marked and received into

evidence and show them -- each side is going to look at them

and inspect them and then deliver them to my deputy to be given

to the deputy marshal to go into the jury room.  And if there

is any disagreement, I'm available to resolve that

disagreement.

          I follow what I call the eight-minute rule which is

you have to be available to be back in this courtroom within

eight minutes of getting a note.  You'll be contacted by Flo or

you may want to be here and when I get a note the standing

instructions are that after I'm informed of its content you too

will be informed of its content and you may begin working on

any ideas for how it should be answered.  And that is basically

about it.

1          So the eight-minute rule means you can't go back to

2     your offices, you can't go back to your hotel.  You really have

3     to be able to get here so that we can get a timely answer to

4     any jury notes.

5          I will say that it has been a privilege to preside at

6     this trial with five excellent advocates, really top tier of

7     lawyers who have ever appeared before me in trying a case.

8          You have acted in a professional manner.  You've

9     worked to resolve the routine issues that arise in a trial and

10    I very much appreciate that.  And all five of you are welcome

11    back in this courtroom any time.  So I appreciate that.

12         And my thanks to the government's paralegal and

13    special agent for their assistance in keeping this trial on

14    track and handling the projection of exhibits, etc.

15         My thanks to our skilled interpreters and our team of

16    court stenographers, to the marshals and deputies, all of whom

17    have worked hard to ensure a fair trial in this case.

18         So with that, we are adjourned until we hear something

19    from the jury.  Thank you.

20              (Recess pending verdict)

21              (Continued on next page)

22

23

24

25

JAHTHER3

1          (Jury not present)

2          THE COURT:  So I have a note from the jury at

3   3:30 p.m. which reads:  May we have the complete testimony

4   transcripts of Ardon, El Rojo and Chang Monroy.

5          I propose to respond as follows:  As the court

6   indicated in its instructions, if you want any of the testimony

7   read, please send out a note specifying what you want to hear

8   and we will bring you back to the courtroom to read it back for

9   you.  Please be as specific as you possibly can in requesting

10  exhibits or portions of the testimony.  Please advise the Court

11  in a note what portions of a witness's testimony you wish to

12  have read back, e.g., the subject matter, event, meeting or

13  issue.  Again, please be as specific as possible.

14         Let me hear from the government.  Any objection to the

15  proposal?

16         MR. BOVE:  No, Judge.

17         THE COURT:  Let me hear from the defendant, any

18  objection to the proposal?

19         MR. MALONE:  No, sir.

20         THE COURT:  All right.  So what I am going to do is I

21  want to add in at the bottom, since the note was not signed by

22  the foreperson, I will add that on there.

23         I'm signing two copies of it, I'm going to show both

24  copies to counsel.  One will be marked as Court Exhibit 14, the

25  other one will be the note that is actually brought into the

JAHTHER3

1    jury room.

2           So my deputy is showing you the response to make sure

3    it's acceptable.

4           (Pause)

5           MR. BOVE:  Thank you, Judge.

6           MR. MALONE:  Thank you, sir.

7           THE COURT:  Okay.  So the one with the sticker will be

8    part of the Court record, the other will be given to the deputy

9    marshal to be brought in to the jury room.

10          And just for planning purposes, we will assemble at

11   five minutes to 5:00 so I can give the jury some instructions

12   as to what they do next.

13          Thank you, we're adjourned.

14          (Recess taken)

15          (Jury present, 4:55 p.m.)

16          THE COURT:  Good afternoon, ladies and gentlemen.

17   Good to see you.  I hope you're comfortable.

18          So while you're deliberating, you have more

19   flexibility on timing.  I'm assuming that you would like to end

20   your workday now, but if you have a different view, I will be

21   around and you could send a note right out and say we want to

22   stay longer.

23          But I will assume that you want to go home now, in

24   which event you can just go home.  It's critical that you don't

25   discuss the case with anyone.  You are at a critical stage.

JAHTHER3

1    The only people who heard the testimony and have a viewpoint on

2    anything are you, not anybody else.  So this is between you and

3    your fellow jurors.  Please try to put it out of your mind,

4    which is hard to do, but try to put it out of your mind

5    tonight, come back fresh and rested, and you may not begin

6    deliberations until all twelve of you have arrived.  And when

7    all twelve of you have arrived, please flip on the switch so

8    that we know you're all safe and sound and that you have begun

9    your deliberations.

10            All right?  With that, have a very pleasant evening,

11   see you tomorrow.

12            (Jury not present)

13            THE COURT:  Have a pleasant evening, we're adjourned.

14            (Adjourned to October 18, 2019 at 10:00 a.m.)

15

16

17

18

19

20

21

22

23

24

25