UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                          No. S2 15 Cr. 379 (PKC)

JUAN ANTONIO HERNANDEZ,

     Defendant.
_____/

**JUAN ANTONIO HERNANDEZ' OBJECTIONS
TO THE PRESENTENCE INVESTIGATION REPORT
AND INCORPORATED SENTENCING MEMORANDUM**

    Juan Antonio Hernandez files the following objections to the Presentence Investigation Report (PSI):

1. **Page 5, Paragraphs 15-16**: Mr. Hernandez objects to all of the Probation Officer's conclusory statements regarding Mr. Hernandez' alleged conduct within these paragraphs.

2. **Pages 5 and 6, Paragraph 18**: Mr. Hernandez objects to all of the Probation Officer's conclusory statements regarding Mr. Hernandez' alleged conduct within this paragraph.

3. **Page 6, Paragraph 20**: Mr. Hernandez objects to all of the Probation Officer's conclusory statements regarding Mr. Hernandez' alleged conduct within this paragraph.

4. **Pages 6-10, Paragraphs 23-41**: Mr. Hernandez objects to all of the Probation Officer's conclusory statements regarding Mr. Hernandez' alleged conduct within these paragraphs.

5. **Page 10, Paragraph 45**: Mr. Hernandez objects to all of the Probation Officer's conclusory statements regarding Mr. Hernandez' alleged conduct within this paragraph.

6. **Page 11, Paragraphs 46-48**: Mr. Hernandez objects to all of the Probation Officer's conclusory statements regarding Mr. Hernandez' alleged conduct within these paragraphs.

7. **Pages 11, Paragraphs 49**: Mr. Hernandez objects to the Probation Officer's inclusion of this matter in Mr. Hernandez' PSI. There is no evidence that Mr. Hernandez had any knowledge and/or involvement in the matter alleged in this paragraph. **Mr. Hernandez moves to strike this paragraph from the PSI.**

8. **Page 12, Paragraphs 51-53**: Mr. Hernandez objects to the Probation Officer's inclusion of this matter in Mr. Hernandez' PSI. There is no evidence that Mr. Hernandez had any involvement in the matter alleged in this paragraph. **Mr. Hernandez moves to strike these paragraphs from the PSI.**

9. **Page 13, Paragraph 59, Base Offense Level**: Mr. Hernandez objects to the Probation Officer's conclusion that he was responsible for 500,000 kilograms of cocaine and therefore should receive a base offense level of 38 under the

guidelines. In Paragraphs 15 and 45, the Probation Officer attributes 200,000 kilograms (not 500,000) of cocaine to Mr. Hernandez.

10. **Page 13, Paragraph 60, Specific Offense Characteristic (Violence)**: Mr. Hernandez objects to the Probation Officer's conclusion that he should receive a two-level increase under the guidelines for "using or directing violence".

11. **Page 13, Paragraph 61, Specific Offense Characteristic (Aircraft)**: Mr. Hernandez objects to the Probation Officer's conclusion that he should receive a two-level increase under the guidelines for importing a controlled substance by an "aircraft other than a regularly scheduled commercial air carrier was used."

12. **Page 13, Paragraph 62, Specific Offense Characteristic (Bribery)**: Mr. Hernandez objects to the Probation Officer's conclusion that he should receive a two-level increase under the guidelines because he "bribed a law enforcement officer to facilitate the commission of the offense."

13. **Page 13, Paragraph 63, Specific Offense Characteristic (Criminal Livelihood)**:

Mr. Hernandez objects to the Probation Officer's conclusion that he should receive a two-level increase under the guidelines because he was engaged in the offense conduct as a "criminal livelihood". Mr. Hernandez objects to all of the Probation Officer's conclusions in this paragraph.

14. **Page 13, Paragraph 66, Specific Offense Characteristic (Leadership)**: Mr. Hernandez objects to the Probation Officer's conclusion that he should receive a four-level increase under the guidelines because he was a "leader, organizer or manager" of criminal activity that involved five or more participants.

15. **Page 14, Paragraph 67, Specific Offense Characteristic (Obstruction)**: Mr. Hernandez objects to the Probation Officer's conclusion that he should receive a two-level increase under the guidelines because he attempted to obstruct justice in October of 2016.

16. **Page 14, Paragraph 66, Adjusted Offense Level**: Based on the Mr. Hernandez' aforementioned objections, he objects to the Probation Officer's conclusion that his adjusted offense should be a 50.

17. **Page 14, Paragraph 66, Total Offense Level**: Based on the Mr. Hernandez' aforementioned objections, he objects to the Probation Officer's conclusion that his total offense level should be 43.

**SENTENCING MEMORANDUM**

Mr. Hernandez submits this memorandum in aid of his sentencing, scheduled for February 24, 2020. For the reasons set forth below, it is respectfully requested that the Court sentence Mr. Hernandez to no more that the mandatory minimum forty (40) year sentence permitted by law.

4

## I. BACKGROUND

Mr. Hernandez understands that the jury's verdict statutorily supplants the Court's sentencing discretion as it relates to the mandatory minimum sentence for Count One (10 years) and Count Two (30 years). However, the Court is still vested with the unfettered authority and discretion to sentence him to the minimum forty-year term of imprisonment—effectively a life sentence considering that Mr. Hernandez is 41 years old and studies suggest that his life expectancy will decrease by two years for every year he serves in prison. *See*, *Patterson, Evelyn. (2013). The Dose-Response of Time Served in Prison on Mortality: New York State, 1989-2003. American journal of public health. 103. 10.2105/AJPH.2012.301148.*

While the charges in this case are extremely serious, the punishment should be consistent with the objective facts of the case and the factors mandated by 18 U.S.C. § 3553. Mr. Hernandez was not a leader or supervisor in the charged conduct. Indeed, as demonstrated during the course of the trial, there was no verifiable and/or reliable evidence (just the testimony of cooperating defendants motivated to say whatever they believed helped the government) that Mr. Hernandez was present for, and actively participated in telephone calls and/or meetings during which integral details of the offense conduct were discussed, planned and implemented.

Mr. Hernandez has been incarcerated in the United States for more than one year and as result of the jury's verdict faces a mandatory minimum sentence of forty long years of incarceration in a country far from his homeland, where he can expect

5

no visitors to provide necessary love and support during a difficult time. His entire family is in Honduras. During his more than one year of incarceration, Mr. Hernandez has seen very few members of his family and has not been visited by or seen his five young school-aged children. Thus, this level of social and cultural isolation that Mr. Hernandez currently faces will continue for at least the next forty years.

It is respectfully submitted that when the Court considers all of the facts relevant to Mr. Hernandez' sentencing, a life sentence is not warranted to protect the public from further crimes of Mr. Hernandez, who will be eighty-one years old and immediately deported if sentenced to the applicable minimum mandatory. Thus, the Court should find that a sentence of forty years in prison is **"sufficient but not greater than necessary,"** to meet all of the sentencing goals contemplated by 18 U.S.C. § 3553(a).

## II. ARGUMENT

Mr. Hernandez stands before the Court prepared to accept its sentence. He has spent over one year in prison in a foreign country without any family. We respectfully submit that the applicable Guidelines range fails to achieve the objectives of 18 U.S.C. Section 3553(a), and that the Court should impose a non-Guidelines sentence of 120 months as to Count One, which is "sufficient but not greater than necessary" to meet the goals of sentencing.

## A. The Applicable Legal Standard

As the Court is aware, the Sentencing Guidelines are advisory and while they serve as the starting point for a sentencing court's analysis, the inquiry does not end there. As noted in Nelson v. United States, 129 S. Ct. 890 (2009), where the Court summarily reversed the Fourth Circuit which had upheld a district court's application of a presumption of reasonableness to the guidelines:

> [t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.

*Id*. at 892. (Emphasis in original.) **Thus, the guidelines are only one factor to be considered by courts in the formulation of a minimally sufficient individualized sentence.**

When imposing sentence, the Court is required to consider the factors set forth in 18 U.S.C. § 3553(a)[1] in order to create an "individualized assessment" based on a defendant's unique circumstances. Gall vs. United States, 552 U.S. 38, 49-50 (2007); see also United States v. Cavera, 550 F.3d 180, 189 (2d Cir. 2008) (*en banc*). The result is that "[a] sentencing judge has very wide latitude to decide the proper degree

---

[1] The relevant factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed" to, inter alia: provide just punishment, deter criminal conduct, protect the public from any future crimes by the defendant, and provide the defendant with rehabilitative training and treatment; (3) "the kinds of sentences available"; (4) "the kinds of sentence and the sentencing range established" for the offense; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

7

of punishment for an individual offender and a particular crime." Cavera, 550 F.3d at 188.

The Court has ample discretion to impose a below-Guidelines sentence. See Kimbrough v. United States, 552 U.S. 85, 101-10 (2007). In doing so, the Court may consider, and rely upon, any information available concerning the background, character, or conduct of the defendant. See Cavera, 550 F.3d at 189-91; see also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense for which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Moreover, in making an "individualized assessment," the Court is not only empowered to impose a sentence below the Guideline range, it is required to do so where a lower sentence would be sufficient to comply with the purposes of Section 3553(a). See, e.g., United States v. Dorvee, 616 F.3d 174, 183-84 (2d Cir. 2010); United States v. Ministro-Tapia, 470 F.3d 137, 142 (2d Cir. 2006). This is consistent with the long-standing principle that a Court consider "every convicted person as an individual" and to uphold "the principle that the punishment should fit the offender and not merely the crime." Pepper v. United States, 562 U.S. 476, 487-88 (2011). In sum, the overarching task of a sentencing court is to fashion a sentence that is appropriate for the individual circumstances of the offense and the defendant, and is

"sufficient, but not greater than necessary" to achieve the statutory goals of punishment, deterrence, and rehabilitation. 18 U.S.C. § 3553(a).

### B. The Section 3553(a) Factors Weigh in Favor of the Minimum Mandatory Sentence of 120 imprisonment as to Count One

- *<u>Nature and Circumstances of the Offense</u>*

As to the nature and circumstances of the offense, it would be folly to believe, considering the jury's verdict, that the Court will not weigh this factor heavily against the Mr. Hernandez. Additionally, we expect that the Government will fully focus on this factor in its sentencing submission and argue that a sentence of life in prison is appropriate. However, we implore the Court to consider the totality of the arguments expressed herein and find that a sentence of a forty years imprisonment **"sufficient but not greater than necessary,"** to meet the sentencing goals embodied in 18 U.S.C. § 3553(a).

Mr. Hernandez was arrested in the United States on November 23, 2018 and has been detained since that date. He ultimately chose to exercise his right to a jury trial and unfortunately was convicted.

Nothing stated in this submission is meant to be critical of the jurors who were attentive, timely and outwardly took their obligation as jurors seriously throughout the trial. However, while we are not critical of the jury and do not seek to re-litigate the evidence presented during the trial, it is important to highlight certain offense-related information that is relevant to the Court's sentencing determination. The

evidence against Mr. Hernandez was almost exclusively based on the uncorroborated (i.e., by any objective physical evidence) testimony of cooperating defendants who were each testifying for one reason--to get their sentences (i.e., ranging from 25 years to life) reduced. Notably, unlike most conspiracies of the type charged in this case, there was not a single item of incriminating physical evidence (i.e., recorded telephone calls, audio or video recording, call or text logs, photographs, fingerprints, financial records or drug ledger entries) to corroborate the testimony of the cooperating defendants who testified and were largely responsible for the conviction of Mr. Hernandez.

The advisory Guideline sentencing range as to Count One (beyond the 10-year minimum mandatory) is driven almost exclusively by the unverified quantity of drugs the cooperating defendants have arbitrarily linked to Mr. Hernandez without any corroboration. The quantity of drugs testified to by these defendants has no objectively verifiable source other than their untrustworthy and biased testimony.

Importantly, the government has not linked any of the fruits of drug trafficking to Mr. Hernandez. The government has not adduced any evidence that Mr. Hernandez had/has: (1) any bank accounts with large unaccounted for sums of money anywhere in the world; (2) any real estate holdings derived from drug trafficking anywhere in the world; and/or (3) any other suspicious wealth or fruits of illicit drug activity anywhere in the world.

- ***The History and Characteristics of the Defendant***

On February 24, 2019, the day that Mr. Hernandez is scheduled to be sentenced to a minimum of 40 years imprisonment, he will be 41years old. Therefore, if the Court sentences Mr. Hernandez to the minimum term of imprisonment allowed by law, Mr. Hernandez will be 81 years old before he would be released from prison and immediately deported back to Honduras.

Mr. Hernandez was born in the Honduran department of Lempira and is the youngest of four children born to the legal union of Juan Hernandez Villanueva (deceased) and Maria Elvira Alvarado Castillo (76 years old). Mr. Hernandez grew up and has spent his entire life in Honduras. Despite the mischaracterization of Mr. Hernandez as no more than an international drug trafficker, Mr. Hernandez has served his country as a member of the military, pursued and obtained a law degree and managed his family's small hotel as well as a farm gifted to him by his deceased father. Mr. Hernandez' childhood and formative years after turning twelve years old were spent in a military boarding school and later as a lieutenant in the military. Mr. Hernandez learned the value of hard work from his family and pursued and engaged in a variety of legitimate vocations including law, business, farming and other agricultural endeavors.

Nearly every letter of support (to be filed separately) and/or conversation with family and personal friends of Mr. Hernandez describe him as someone who is "kind," "gentle," "generous" and "respectful". These are people who have known

11

Mr. Hernandez for decades in some instances and describe the idea of him being involved with drug trafficking and/or violence as "totally out of character" for the person they know and love. The overwhelming support Mr. Hernandez has from family, friends and supporters back home cannot be understated.

Mr. Hernandez' history and characteristics are reflective a man who was not a bigshot international drug trafficker. To the contrary, Mr. Hernandez had a home mortgage, car notes, over-drafts on his bank accounts at times and the kind of financial challenges faced by working-class people--not large-scale drug traffickers. Mr. Hernandez worked legitimate jobs and provided financial support for his family and children derived therefrom. Indeed, up until the time of his arrest, Mr. Hernandez' children and those closest to him relied on him for financial support and now his absence has logically made life more difficult for all of them.

### *The Need for General Deterrence*

A sentence of forty years imprisonment in which Mr. Hernandez will be 81 years old upon scheduled release is sufficient but not greater than necessary to promote general deterrence and weighs persuasively in favor of a 120-month sentence as to Court One. Such a sentence sends the desired cautionary message at the heart of 18 U.S.C. § 3553(a)(2) to would be traffickers thinking of illegally transporting narcotics to the United States.

Because Mr. Hernandez is perceived by many in Honduras to be part of the privileged class, the Court sentencing Mr. Hernandez to the minimum mandatory

forty-years imprisonment is likely to have a greater-than-normal deterrent effect on potential drug traffickers. Followers of Mr. Hernandez' fate will no-doubt recognize and take heed that if he (i.e., someone perceived to be of privilege by many in Honduras) can be captured, prosecuted and sentenced to 40 years in prison within 15months of arrest, I better think twice about actually engaging in drug trafficking. A term of imprisonment of forty years for Mr. Hernandez would have that elevated deterrent effect.

- ***The Need to Avoid Unwarranted Sentencing Disparities***

Finally, a forty-year term of imprisonment avoids any concern for unwarranted sentencing disparities. While no two cases or defendants are the same and the court is always charged with formulating an "individualized sentence", it is instructive to point out that some of the leaders of Honduran and other large-scale drug-trafficking organizations have been (or will likely be) sentenced to terms of imprisonment that are commensurate with the forty-year sentence Mr. Hernandez is seeking.

## *SENTENCES FOR TESTIFYING WITNESSES*

- ***United States v. Amilcar Alexander Ardon***, No.: 19-cr-45 (PAE) (S.D.N.Y.) (the "Mayor) (Sentence: **Pending**);

- ***United States v. Fernando Josue Chang Monroy***, No.:14-cr-00075-HEH (E.D. Va.) (Sentence: **20** years imprisonment);

- *United States v. Victor Hugo Diaz Morales*, No.: 15-cr-379 (PKC) (S.D.N.Y.) ("El Rojo") (Sentence: **Pending**);

- *United States v. Devis Leonel Maradiaga*, No.: 13-cr-413 (JGK) (S.D.N.Y.) (Leonel Rivera Devis Maradiaga (A/K/A "Leo Cachiro") (**CCE** Sentence: **Life** Imprisonment);

- *United States v. [Witness Subject to Protective Order]*, No.: 15-cr-xxx (LGS) (S.D.N.Y.) (Sentence: **Pending**).

## *SENTENCES IMPOSED IN SIMILAR CASES*

- *United States v. Wilter Blanco-Ruiz*, No.: 16-cr-20602-DMM (S.D. Fla.) (Sentence: **27** years imprisonment);

- *United States v. Carlos Arnoldo Lobo*, No.:11-cr-20358-DPG (S.D. Fla.) (Sentence: **20** years imprisonment);

- *United States v. Fabio Lobo,* No.: 15-cr-174 (LGS) (S.D.N.Y.) (Sentence: **24** years imprisonment);

- *United States v. Noe Montes-Bobadilla***,** No. 1:15-cr-00290-LO-1 (E.D. Va.) (Sentence: **37** years of imprisonment);

- *United States v. Arnulfo Fagot Maximo,* No. 1:15-cr-00290-LO-6 (E.D. Va.) (Sentence: **33** years of imprisonment);

- *United States v. Miguel and Luis Valle et al.*, No.: 14-cr-00135-LO (E.D. Va.) (Sentence: **30** years of imprisonment);

14

- *United States v. Ramiro "Cuco" Vanoy*, Case No.: 99-cr-6153 (KMM) (SDFL) (Sentence: **24** years imprisonment)

- *United States v. Oscar Varela Garcia*, No.: 99-cr-0804-CMA (S.D. Fla.) (Gov't sought a 60-year sentence **after trial**) (Sentence: **24** years imprisonment).

Based on the foregoing analysis, the relevant factors set forth in Title 18 U.S.C. § 3553(a) all weigh in favor of the Court imposing a 40-year term of imprisonment in Mr. Hernandez' case.

## CONCLUSION

For all the foregoing reasons, Mr. Hernandez respectfully requests that the Court impose a sentence of no more than the 40-year sentence mandated by statute.

**Dated: February 9, 2020**                     Respectfully submitted,

*s/ T. Omar Malone*
T. Omar Malone, Esq.
omar@teinmalone.com
Michael Tein, Esq.
tein@teinmalone.com
**TEIN MALONE PLLC**
3059 Grand Avenue – Suite 340
Coconut Grove, Florida 33133
(305) 442-1101

*COUNSEL FOR JUAN ANTONIO HERNANDEZ*