United States of America v. Juan Antonio Hernandez Alvarado
15 cr 379 (PKC)
Statement of Reasons
Sentencing, March 30, 2021 at 2 p.m.

After hearing the evidence at trial, a twelve-person jury found beyond a reasonable doubt that Juan Antonio Hernandez was a member of a conspiracy to import drugs into the United States from 2004 to 2016. In addition, the jury found him guilty of conspiracy to possess a machine gun in furtherance of drug trafficking and the substantive crime of possession of firearms, including a machine gun. The jury also found him guilty of lying in a 2016 voluntary interview with DEA Agents. Five cooperating witnesses testified at trial in addition to other witnesses and evidence, including photographs and recordings.

As a judge, I am frequently called upon to impose sentence upon individuals in the drug trade. Some have become retail sellers infecting neighborhoods with a substance that destroys families and lives, through addiction, disease and violence, including turf wars and drive by shootings. Some of these retail sellers come from families where the mother was an addict, or the father was imprisoned for drug related crimes. In many of these cases, the defendants are responsible for retail sales measured in grams. Often, they justly receive lengthy prison sentences. I also am required to sentence those buying or selling in kilo quantities. The quantity and type of drug plays an important part in sentencing.

I also see young men from Colombia who are caught in international waters on "go fast" boats loaded with cocaine with an ultimate destination of the United States after transshipment through Central America. These "go fast" drivers typically have little knowledge of the source of the drugs or the distribution network beyond their own role. Many are unskilled,

impoverished and endeavoring to support their families. They receive lengthy sentences for their actions.

And then there is Juan Antonio Hernandez Alvarado, also known as Tony Hernandez. He is 41 years of age, reasonably fit and in good health. He makes an excellent appearance, well-dressed, wearing a warm and engaging smile. He is well educated, went to a military boarding school and received a college degree in law. His family had legitimate businesses, including a hotel and a pharmacy, in which he could have earned a good, honest living. He briefly practiced law. He was elected as a member of the Honduran Congress and could have used his considerable talents for good. But Juan Antonio elected to go in a very different direction.

The trial of Juan Antonio unmasked many details of international narco-trafficking—state sponsored-narco-trafficking. It corrupts every facet of society. Juan Antonio became a major facilitator of the movement of cocaine through Honduras with an eventual destination of the United States. He became a partner in one of the ultimate sources of supply, a cocaine lab in Colombia. He brazenly had his own brand of cocaine imprinted with the initials TH for Tony Hernandez. I recall one cooperator estimating that he purchases 15,000 kilograms from Tony Hernandez.

The defendant is responsible for the murders of Franklin Arita, a trafficker who had interrupted the supply lines of Alex Ardon Soriano. He was murdered utilizing the services of Tigre Bonilla, a police chief. Also Chino, a member of the drug operation who had the misfortune of having been arrested was viewed as posing a threat because he knew too much about the drug operations and could cooperate with law enforcement. Juan Antonio wanted him murdered and when the job was done he expressed happiness.

Juan Antonio rented helicopters to drug traffickers and supplied them with weapons and ammunition, including in one transaction 4,000 to 6,000 pieces of amuntion for assault weapons that were boxed in containers with the markings of the Honduran Military. He acted as middleman in bribes to politicians, including his brother Juan Orlando Hernandez and the National Party. After his second meeting with Joaquin Guzman a/k/a El Chapo leader of the Sinaloa Cartel, he agreed to accept Guzman's offer of $1million in cash for his brother Juan Orlando's presidential campaign in exchange for a pledge of protection for his drug shipments and immunity. Guzman was not the only drug trafficker to whom Tony Hernandez sold protection from prosecution by the government and interdiction by the Honduran Military and National Police. In exchange for payments to him, he alerted drug traffickers to night vision helicopter maneuvers and radar patterns that might have resulted in seizing of shipments. For the radar information, he charged $50,000.

Facts, not speculation, enable the government to reliably estimate that the quantity of cocaine for which Juan Antontio bears responsibility from 2004 through 2015 is 185,000 kilograms. At 8,000 doses per kilogram, this translates to nearly 1.5 billion individual doses of cocaine. The gross income of Juan Antonio from drug trafficking during that same period is reliably estimated at $138,500,000 US dollars.

Defendant and his co-conspirators were indifferent to the consequences of their acts on the lives of people in their own country and in this country. A long sentence will promote respect for law and will serve as a deterrent to others who might engage in similar conduct. It will protect the public from further crimes of this defendant while he is incarcerated. I have considered the need to avoid unwarranted sentence disparities. The highest drug quantity for cocaine recognized by the Sentencing Guidelines is more than 450 kilograms. Very few

3

defendants, about 6.6% of drug trafficking cases in 2019, have a drug quantity in this highest range. Defendant is responsible for the distribution of 185,000 kilos. I have considered the arguments presented by each side on comparative sentence found in the government's submission at pages 51-55 and in the defendant's memorandum at 13-15.

I have considered the guidelines, policy statements and official commentary of the Sentencing Commission. I recognize that the guidelines are advisory and not binding on the Court. I acknowledge that I have variance discretion.

Defendant faces a mandatory minimum of 10 years on Count 1 and a mandatory consecutive 30-year minimum term of imprisonment on Count 2. By law, I am required to sentence him to a minimum of 40 years imprisonment on Counts 1 and 2. Again that is the minimum. The maximum term on each of Counts 1, 2 and 3 is life imprisonment and on Count 4 is 5 years imprisonment.

At total offense level 43 CHC 1, the Guidelines range is life imprisonment plus the mandatory consecutive term on Count 2 of 360 months. The prosecution and the Office of Probation recommend that I impose this sentence.

Based upon his free choice to engage in a life of drug trafficking over a 12-year period which affected the lives of the people in the United States, Honduras and elsewhere, a sentence of life imprisonment on Counts 1 and 3 is richly deserved, together with 5 years concurrent on Count 4. By law I am required to impose the 30-year mandatory minimum as consecutive to that on Count 3. I will impose forfeiture of $138,500,000 and the $400 special assessment. I will not impose a fine in view of the forfeiture amount. The foregoing in my view is sufficient but not greater than necessary to achieve the purposes of section 3553(a).

This Court is under no delusion that the sentence will end narco-trafficking through Honduras. But today's sentence is an important step. It is not the only prosecution in this district of individuals accused of using Honduras as a transit point for drugs. The experience of law enforcement with La Cosa Nostra or the Mafia--is instructive. By repeatedly going after leaders and organizers of these organized crime families, their impact has been weakened. They are a shadow of what they once were.

Ending the movement of cocaine from Columbia through Honduras, Guatemala and Mexico to the United States is the hope of all good people in Honduras, the United States and other countries of the Americas. Looking back in years to come, today may prove to have been an important step in eliminating the corruptive and corrosive influence of narco-trafficking.